**State v. Simmons**
*[Cite as 6 AOA 86]*

*Case No. 89 CA 18*
*Washington County, (4th)*
*Decided August 31, 1990*

*Michael D. Buell, Buell and Sipe, Marietta, Ohio, for Appellant.*

*Robert J. Pioli, Marietta City Law Director's Office, Marietta, Ohio, for Appellee.*

HARSHA, J.

This matter is before us on appeal from the Marietta Municipal Court on the conviction of appellant for violating R.C. 4511.19(A)(3), operating a motor vehicle while having a concentration of ten hundredths of one gram or more by weight of alcohol per two hundred ten liters of breath. Appellant sets forth four assignments of error:

*ASSIGNMENT OF ERROR NO. 1*
"THE DEPUTY SHERIFF'S INITIAL STOP OF THOMAS T. SIMMONS' VEHICLE VIOLATED MR. SIMMONS' RIGHTS AS GUARANTEED BY THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 14 OF THE OHIO CONSTITUTION BECAUSE THE DEPUTY SHERIFF DID NOT HAVE AN ARTICULABLE AND REASONABLE SUSPICION THAT MR. SIMMONS WAS INTOXICATED AND THAT HIS DRIVING ABILITY WAS IMPAIRED AS A RESULT OF HIS INTOXICATION."

*ASSIGNMENT OF ERROR NO. 2*
"THE DEPUTY SHERIFF'S ARREST OF THOMAS T. SIMMONS VIOLATED MR. SIMMONS' RIGHTS AS GUARANTEED BY THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 14 OF THE OHIO CONSTITUTION BECAUSE THE ARRESTING OFFICER DID NOT HAVE PROBABLE CAUSE THAT MR. SIMMONS WAS INTOXICATED AND THAT THIS INTOXICATION IMPAIRED MR. SIMMONS' ABILITY TO OPERATE A MOTOR VEHICLE."

*ASSIGNMENT OF ERROR NO. 3*
"THE TRIAL COURT ERRED WHEN IT REFUSED TO PERMIT COUNSEL FOR MR. SIMMONS TO ELICIT TESTIMONY THAT MR. SIMMONS DID NOT DEMONSTRATE THE COORDINATION CHARACTERISTICS OF AN INDIVIDUAL WHO HAD A TEST RESULT OF .122 ON THE BAC VERIFIER AND THAT JIMMY SWAIN WHO HAD CON- SUMED MORE ALCOHOL THAN MR. SIMMONS HAD A LOWER TEST RESULT THAN MR. SIMMONS ON THE BAC VERIFI- ER. THE REFUSAL TO ADMIT THIS EVI- DENCE VIOLATED MR. SIMMONS' RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE 1, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND OHIO EVIDENCE RULE 402."

*ASSIGNMENT OF ERROR NO. 4*
"THE TRIAL COURT'S FAILURE TO ADMIT EVIDENCE OF MR. SIMMONS' COOR- DINATION TESTS RESULTS; EVIDENCE OF THE RELATIONSHIP OF HIS COORDINA- TION TEST RESULTS TO HIS BAC VERIFI- ER RESULTS; AND EVIDENCE OF JIMMY SWAIN'S BAC VERIFIER RESULTS DENIED MR. SIMMONS OF HIS RIGHTS AS GUAR- ANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; AND ARTICLE 1, SECTION 10 AND 16 OF THE OHIO CONSTITUTION."

In the late evening hours of November 2, 1988, to the early morning hours of November 3, 1988, appellant and Jimmy Swain went to a club in Parkersburg, West Virginia where they drank alcoholic beverages. Mr. Swain and appellant left the club together and rode in Mr. Swain's auto- mobile. They stopped at Mr. Swain's girlfriend's place of employment to pick up her car which was having mechanical problems. Appellant then drove Mr. Swain's car and Mr. Swain drove his girlfriend's automobile. They drove away with appellant operating the rear automobile. Deputy Sheriff Rod Kinzy was patrolling State Route 124 in Little Hocking that morning. It was very foggy and that section of the road is very curvy. The vehicles driven by Mr. Swain and appellant approached the officer who was proceeding in the opposite direction. The officer reversed his cruis- er to pursue the automobiles.

The Deputy followed the two automobiles for approximately one-tenth (1/10) of a mile. The officer claimed to have seen the Simmons' vehicle cross the center line and then go off the berm "several times" while following him for that short distance. However, neither the officer's report nor his own affidavit filed with the court reflected that he saw either automobile go off the berm.

The officer stopped both vehicles. Mr. Simmons was required to perform three coordina- tion tests.

At the completion of the performance tests, both Mr. Swain and Mr. Simmons were arrested for violations of R.C. 4511.19(A)(1) and R.C. 4511.19(A)(3).

Both individuals were transported to the Highway Patrol Post. At 4:13 a.m. Mr. Swain tested .078 on the BAC verifier. Nine minutes later, appellant tested .122 on the same BAC verifier. Appellant filed a motion to suppress which was denied, after a hearing. Immediately prior to trial, the trial court granted a state's motion in limine to prevent the accused from eliciting testimony concerning Mr. Simmons' performance on the coordination tests. At the same time, the State of Ohio announced its intention to not proceed with the charge pursu- ant to R.C. 4511.19(A)(1).

The court refused to allow the defense coun- sel on cross examination to demonstrate that there was a correlation between the BAC verifier and the coordination tests.

The following are asserted in appellant's first and second assignment of errors, respective- ly. The trial court improperly denied appellant's motion to suppress because the officer lacked reasonable grounds to stop appellant's vehicle and further, he did not have probable cause to arrest appellant for driving under the influence of alcohol.

Law enforcement encounters with suspected drunk drivers involve two stages: (1) a stop and (2) a subsequent arrest. *State v. Finch*, 24 Ohio App. 3d 38. Pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S. Ct. 1868, an officer may briefly detain an individual while he investigates the suspicious behavior which gave rise to the stop. A detention conducted pursuant to *Terry* must be based upon a reasonable and articulable suspi- cion of criminal activity. *United States v. Sharpe* (1985), 470 U.S. 675, 105 S. Ct. 1568. The articulable and reasonable suspicion must exist in the officer's mind at the time of the stop and cannot be based on facts obtained after the initial

stop. *State v. Freeman* (1980) 64 Ohio St. 2d 291, 294.

Appellant argues that the officer in this case did not possess the requisite articulable and reasonable suspicion to stop him. He premises this argument on the officer's testimony that he followed appellant's vehicle for only one-tenth of one mile or for a period of approximately seven seconds. During that time, the officer's attention was diverted to observing a second vehicle and radioing the dispatcher. Appellant contends that the officer's testimony was not credible since it was a "physical impossibility to both drive across the center line and off the road several times in a period of approximately seven seconds." Appellant's Brief, p. 4. Appellant bolsters this argument by pointing out that the officer failed to include in his report that appellant drove his vehicle off the road. Finally, appellant argues that his erratic driving was just as probably caused by the foggy weather and curvy road conditions, as it was by the influence of alcohol.

Upon review of the record, we hold that the trial court did not error in finding that the officer had reasonable suspicion to step appellant. At the motion to suppress, Deputy Kinzy testified that he was patrolling St. Rt. 124 at approximately 2:40 A.M. on November 3, 1988 near Little Hocking in Washington County when two vehicles approached his cruiser coming from the opposite direction. Kinzy testified that the autos passed him traveling at a speed that was too great for the prevailing weather and road conditions. He turned his cruiser around and caught up with the automobiles. He followed the appellant for approximately one-tenth of a mile before stopping him. The officer noted that there was heavy fog that night and visibility was limited. Appellant was travelling at approximately fifty miles per hour when Kinzy caught up to him. The posted speed limit for that area is fifty-five miles per hour. During that period, Kinzy radioed the dispatcher and told him that he was following two suspected drunk drivers. Kinzy observed appellant's auto cross the center line and then go off the berm several times. Kinzy admitted on cross examination that this latter observation was not in his report. Based upon the driving pattern of appellant and the excessive speed for the weather conditions, Kinzy stopped appellant.

Despite appellant's attack of the witness' credibility, the trial court held that the officer possessed a reasonable and articulable suspicion to stop the automobile. We agree. In a motion to suppress, the trial court assumes the role of trier of facts, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Clay* (1972), 34 Ohio St. 2d 250. Accordingly, we are bound to accept the trial court's finding of facts if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the legal standard set forth in *Terry, supra* and *Sharpe, supra.* Appellant's counsel pursued a vigorous cross-examination of the witness, attacking Kinzy's limited observation of appellant's driving and the discrepancies between the testimony and the report. It is a question of fact as to whether or not Kinzy actually observed the matters to which he testified. Appellant merely offered the argument of counsel as to the physical impossibility of such observances. He did not offer any contradictory proof. Further, the discrepancies between the officer's report and his testimony go to the weight and credibility of the witness' testimony. The court is in the best position to determine weight and credibility.

Based upon the foregoing discussion, we hold that the trial court properly ruled, as a legal conclusion, that the officer had reasonable suspicion to stop appellant's automobile where he observed speed in excess of that mandated by conditions and erratic control of the vehicle.

Appellant's second assignment contests the trial court's denial of his motion to suppress in that the officer did not have probable cause to arrest appellant for violating R.C. 4511.19(A) (1) and (A)(3). The same standard of review applies to the determination of probable cause as was used above. In his brief, appellant acknowledges the officer's testimony as to appellant's driving; however, he still questions the credibility of the officer's observations. Appellant maintains that the erratic driving pattern, if any, was the result of the foggy night and not excessive alcohol consumption.

At the hearing, Kinzy testified that he stopped both autos and asked appellant to perform three field tests. Appellant performed the "heel to toe" test and the balance test satisfactorily. Appellant did poorly on the "finger to nose" test. He was able to touch his nose eventually after hesitating. Kinzy testified that he had to repeat the directions a number of times to appellant. Kinzy stated that based upon his experience, impaired drivers usually have to have the instructions repeated several times. Kinzy also

testified that during the initial stop of appellant, he noticed the moderate odor of an alcohol beverage on appellant's breath; that appellant's eyes were blood shot; and that appellant mumbled and was hesitant.

Probable cause exists where there is a "'[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.'" *Huber v. O'Neill* (1981), 66 Ohio St. 2d 28, 30, citing *Ash v. Marlow* (1851), 20 Ohio 119; *State v. Timson* (1974), 38 Ohio St. 2d 122. To determine whether an officer had probable cause to arrest an individual for a violation of R.C. 4511.19, a "totality of the circumstances" test must be employed. *Atwell v. State* (1973), 35 Ohio App. 2d 221, 226-227. Also, to support an arrest for drunk driving, the arresting officer must observe not only the indicia of alcohol consumption, but also "the existence of some reasonable indicia of operation while under the influence of alcohol ***." *State v. Taylor* (1981), 3 Ohio App. 3d 197, 198.

In the case at hand, the officer testified to the indicia of alcohol consumption, as well as to the reasonable indicia of driving impairment. The officer testified that after being stopped, the appellant had an odor of alcohol on his breath and his eyes were bloodshot. Appellant had a mumbled speech pattern and he admitted to drinking three beers. Indicia of driving impairment was demonstrated by the officer's testimony that appellant operated his vehicle in a dangerous and erratic manner by causing it to cross the center line and run off the berm.

The cases cited by appellant are inapposite. In *State v. Finch*, supra, the trial court held that the arresting officer did not have probable cause to arrest the defendant because the officer failed to observe any erratic driving by the defendant prior to the arrest. Here, the officer observed erratic driving behavior prior to the arrest. In *City of Sylvania v. Grockowski* (Dec. 19, 1986), Lucas App. No. L-86-124, unreported, the officer observed erratic driving behavior and stopped the defendant. The defendant performed poorly on several field sobriety tests. The appellate court held that probable cause did not exist to arrest the defendant since there existed "none of the traditional evidence generally considered to apply to an individual who operates the vehicle while under the influence. At no time did the officer indicate that he had smelled an odor of alcohol, that appellant's eyes were red or that

appellant had slurred speech." *Id.* at 2-3. The evidence demonstrated only erratic driving, not driving while under the influence of alcohol. Here, the officer testified as to the presence of the odor of alcohol; that appellant's eyes were bloodshot; that he had mumbled speech; and that appellant stated that he had drank three beers.

Appellant's true criticism is that once he "passed" the coordination tests he should have been absolved of any suspicion that he was driving while under the influence of alcohol. Even though appellant was able to perform several of the field coordination tests, based upon the totality of the circumstances which takes into account, appellant's erratic driving and the strong indicia of alcohol consumption, probable cause existed that appellant was driving while under the influence.

Appellant's second assignment of error is overruled.

Appellant's third and fourth assignments will be discussed together. Appellant argues that his constitutional rights to cross examination, compulsory process and counsel were violated by the trial court's *in limine* order precluding the introduction of evidence as to appellant's field sobriety tests, evidence of the relationship of his field sobriety tests to his BAC verifier results and evidence of Swain's BAC verifier tests. Appellant argues that this evidence is relevant pursuant to Evid. R. 401 and 402, in that this evidence will prove that the result of the BAC verifier as to his test was erroneous.

It is well-settled law, that an accused may not attack the general reliability of intoxilyzers as valid, reliable breath-testing machines. *State v. Vega* (1984), 12 Ohio St. 3d 185. Although appellant may not challenge the general accuracy of the BAC verifier as a valid scientific means of determining blood-alcohol levels, he may challenge the accuracy of his specific test result. *State v. Tanner* (1984), 15 Ohio St. 3d 1; *Columbus v. Sullivan* (1982), 4 Ohio App. 3d 7. The accuracy of a specific test may be challenged by an accused to demonstrate that something went wrong with his test and that the result was at variance with what the approved testing process should have produced. *Columbus v. Day* (1985), 24 Ohio App. 3d 173.

The issue here is what type of evidence is relevant to challenge a BAC verifier when the accused has been charged with violating R.C. 4511.19(A)(3) only. The supreme court has expounded on the definition of relevant evidence which may be introduced in a trial to prod the

accused violated R.C. 4511.19(A)(3). The syllabus in *State v. Boyd* (1985), 18 Ohio St. 3d 30 states as follows:

"In order to sustain a conviction under R.C. 4511.19(A)(3), there must be proof beyond a reasonable doubt that the defendant was operating a vehicle within this state and that at the time he had a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath. The relevant evidence is limited to that evidence having any tendency to make the existence of either or both of these facts more probable or less probable."

The supreme court upheld the trial court's order barring the accused from offering evidence which related to his manner of driving, physical coordination, conduct, speech, and other matters. In so holding, the court stated *"standing alone,* appellee's appearance, manner of speech and walking, and lack of any symptoms of intoxication are not relevant evidence and, therefore, not admissible. " *Id.* at 31. (Emphasis added.)

The trial court was presented with this case law on the morning of trial. At that time, the state dismissed its charge against appellant as to driving while physically impaired, R.C. 4511.19(A)(1) and proceeded solely on the *per se* statute, R.C. 4511.19(A)(3). Pursuant to *Boyd,* the state filed a motion in limine requesting that appellant be precluded from introducing evidence such as the results of the field sobriety test which would have been relevant only as to the physical impairment charge that was dismissed. Also, in the motion and at pertinent points in the trial when appellant proffered evidence to protect his appeal, appellant argued for the admissibility of Swain's test result and of testimony elicited from the state's witness that there is a correlation between BAC verifier results and field sobriety tests. Generally, the latter proffered testimony indicates that as the BAC verifier results increase, field sobriety test scores decrease.

The trial court heard legal arguments from counsel and listened to the proffered testimony. The court questioned defense counsel as to whether it would produce expert testimony pertaining to appellant's alcohol absorption rate. The trial court held that, as stated in *Boyd, supra,* lay opinion would not be sufficient to attack the credibility of the BAC verifier. However, in a position that is consistent with *Boyd, supra* and *Vega, supra,* the trial court held that the lay testimony as to appellant's driving, alcohol consumption, field sobriety tests and

Swain's test result would be admissible if appellant had an expert witness to relate these general observations to the issue of whether it was scientifically probable that appellant could have tested .122 based upon the facts of the case as testified to by tee lay witnesses. Likewise, the testimony as to the correlation of the BAC verifier results and field sobriety tests was based upon the general population's response. Appellant did not offer any expert opinion testimony as to the correlation between his BAC verifier results and his related coordination.

We hold that the trial court properly applied the law in upholding appellee's motion in limine and in limiting testimony as to the general correlation between BAC verifier results and field sobriety test results. Lay evidence as to appellant's performance on field sobriety tests and BAC scores received by another individual minutes prior to appellant's test are not sufficient by themselves to challenge appellant's BAC verifier results. The evidence would have been admissible in conjunction with expert testimony addressing 1) the correlation between appellant's ability to perform field sobriety tests as plotted against varying his BAC verifier results; and 2) the relationship between Swain, his alcohol consumption and his test result and appellant, his alcohol consumption and his test result and the factors influencing alcohol absorption rate. The expert witness, working from the lay testimony, would be able to offer an opinion to a reasonable degree of certainty as to whether the BAC verifier test result of appellant was an accurate measure of appellant's blood alcohol content. *Columbus v. Day, supra.*

Appellant's argument that his constitutional rights to cross-examination, compulsory process and counsel were denied is not well-taken. The accuracy of appellant's specific test result may be challenged by appellant and is subject to attack by relevant evidence, including expert testimony in conjunction with lay testimony and any evidence of a second test as provided in R.C. 4511.191. Appellant was not precluded from presenting his case. He was precluded from offering irrelevant evidence. As stated above, the evidence stricken by the trial court would have been admissible if appellant had offered the requisite expert testimony to raise the general testimony to a specific attack on the BAC verifier test result. Appellant was not unconstitutionally hampered in the presentation of his defense. See, *State v. Myers* (1971), 26 Ohio St. 2d 190, 201.

Appellant's third and fourth assignments of error are overruled.

*Judgment affirmed.*

STEPHENSON, J., concurring.

I concur in the judgment and that part of the opinion which disposes of the first, second and third assignments of errors. I also concur in overruling the fourth assignment of error but not fully in the reasons set forth in the opinion.

I agree that expert testimony is admissible as bearing upon the accuracy of the specific test of the defendant relied upon by the prosecution as was held in *Columbus v. Day, supra.* I am not persuaded, however, that expert testimony regarding test results of third persons is admissible to raise an inference that an accused's *specific* test result was inaccurate. In *Columbus v. Day, supra* at 174, the Franklin County Court of Appeals stated as follows:

"[T]he accuracy of *a specific test* result is subject to challenge in the sense that an accused may endeavor to show something went wrong with *his test* and that, as a consequence, the result was at variance with what the approved testing process should have produced.

"***

"The most direct method of challenging *a specific test result,* when evidence is available, is to establish that the approved testing procedure was not followed, or that the equipment used was malfunctioning." (Emphasis added.)

Admitting evidence regarding test results given to third persons too closely resembles a general attack on accuracy of the machine. Thus, I decline to join with the majority on this narrow issue.