CITY OF COLUMBUS, APPELLEE, *v.* DAY, APPELLANT.

(No. 84AP-1128 — Decided June 11, 1985.)

*Gregory S. Lashutka,* city attorney, *Ronald J. O'Brien,* city prosecutor, and *David E. Tingley,* for appellee.

*Gerald G. Simmons* and *Dennis G. Day, pro se,* for appellant.

NORRIS, J.  Defendant appeals his conviction for operating a motor vehicle while having a prohibited concentration of alcohol in his breath. The concentration had been measured by an intoxilyzer machine.

During the course of his trial on this *per se* violation, defendant sought to introduce the testimony of a chemist concerning intoxilyzers, and to have the expert give his opinion, in response to a hypothetical question, that defendant could not have tested as high as was indicated by the city, had the intoxilyzer been operating properly. At the urging of the city, the trial court excluded the proffered testimony, concluding that it challenged the validity of a testing procedure which had been approved by the Ohio Director of Health.

Defendant raises one assignment of error:

"The trial court erred in excluding the expert testimony proffered [*sic*] by defendant that, given what defendant had had to drink over the relevant time period, the defendant should have had an intoxilyzer test result of less than .10."

An accused may not use expert testimony to attack the general reliability of intoxilyzers as valid, reliable breath-testing machines, in view of the fact that the General Assembly has legislatively provided for the admission of such tests if analyzed in accordance with methods approved by the Director of Health. *State* v. *Vega* (1984), 12 Ohio St. 3d 185. Although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood-alcohol levels, he may challenge the accuracy of his specific test result. *State* v. *Tanner* (1984), 15 Ohio St. 3d 1, at 6; *Columbus* v. *Sullivan* (1982), 4 Ohio App. 3d 7, at 10; *State* v. *Grimes* (Dec. 30, 1980), Franklin App. No. 80AP-651, unreported, at page 6.

The import of these cases is that, while the efficiency of a testing process which has been approved by the Director of Health is not subject to challenge, since it is presumed accurate when the equipment is in working order and used properly, the accuracy of a specific test result is subject to challenge in the sense that an accused may endeavor to show something went wrong with his test and that, as a consequence, the result was at variance with what the approved testing process should have produced.

Under the circumstances of this case, then, defendant could utilize evidence which tended to show that this particular machine did not function properly in performing this test and, thus, produced an inaccurate test result. What was not permitted was evidence which tended to prove that this machine, in common with others of its type, did not have the capacity to produce an accurate test result on this, or any other, occasion.

The most direct method of challenging a specific test result, when evidence is available, is to establish that the approved testing procedure was not followed, or that the equipment used was malfunctioning. But, it is conceivable that evidence of this nature will not be available to an accused since it is peculiarily within the knowledge of the state; and, yet, the accused believes his test result is inexplicable. Accordingly, a person who has not consumed any alcohol and, yet, is confronted with the result of a test which indicates that he has an alcohol concentration in excess of the statutory limit, should be able to prove that he had nothing to drink. That evidence is relevant for the limited pur-

pose of attempting to prove that something went awry with this particular test — in the case of a urinalysis, for example, perhaps specimens were inadvertently exchanged in the laboratory — even though the accused is unable to say what happened. This same situation would apply had the accused consumed a small quantity of alcohol. And, in each instance, expert testimony is available to assist the trier of fact to understand the evidence — to show that this accused could not have produced the test result claimed by the prosecution under these circumstances. The testimony of both the expert and the accused are limited to addressing the validity of his test; it would not be admissible, for example, as tending to show that the accused was not under the influence of alcohol, since that is not the charge under the *per se* provisions.

When an expert's opinion testimony is utilized in this manner to attempt to prove that something went wrong with the accused's test, then, of course, the validity of his opinion will depend upon the persuasiveness with which the accused has established the underlying facts which undergird the opinion. Accordingly, the prosecution will be in a position to point out to the trier of the facts, through cross-examination of the expert witness, that his opinion would be different if, for example, the accused consumed more alcohol than he admits.

When the chemist's proffered testimony is viewed in this context, it is apparent that the trial court properly excluded testimony which challenged the ability of intoxilyzers to accurately measure the alcohol content of breath — for example, quarreling with ratios between breath-alcohol content and blood-alcohol content; the varying ability of persons to provide deep lung samples of breath; the margin of error expected of intoxilyzers; the accuracy of body temperature assumptions built into the intoxilyzer as compared with defendant's body temperature; and the effect upon intoxilyzers of organic contaminants in the air and in the subject's breath.

On the other hand, testimony was improperly excluded which was relevant to a determination of whether this intoxilyzer produced an accurate test result on this occasion. This consisted of the expert's proffered opinion of the result that should have been produced by a properly operated and functioning intoxilyzer, based upon assumptions of the expert witness concerning defendant's weight, the quantity and type of alcoholic beverages defendant said that he had consumed, and the period of time over which he said they were consumed.

To the extent discussed above, the assignment of error is sustained in part and overruled in part. The judgment of the trial court is reversed, and this matter is remanded to the trial court for a new trial.

*Judgment reversed and*
*cause remanded.*

STERN, J., concurs.

STRAUSBAUGH, J., dissents.

STERN, J., retired Justice of the Supreme Court of Ohio, assigned to active duty pursuant to Section 6(C), Article IV, Constitution.

STRAUSBAUGH, J., dissenting. I concur with the judgment of the trial court.