OPINION
{¶ 1} Defendant-appellant Richard D. Harding appeals from his conviction and sentence for aggravated vehicular assault pursuant to R.C. § 2903.08(A)(1)(a). On January 29, 2004, Harding was indicted in Montgomery County, Ohio for aggravated vehicular assault in connection with a motor vehicle accident that occurred on November 22, 2003. On February 12, 2004, Harding pled not guilty and was released on his own recognizance.
 {¶ 2} Following a jury trial that began on September 20, 2004, and concluded on September 24, 2004, Harding was found guilty. Pursuant to R.C. § 2903.08(D), Harding was sentenced to one year mandatory imprisonment. His driver's license was suspended for two years, and a $2,500.00 fine was imposed. Execution of Harding's sentence was stayed pending appeal.
 I {¶ 3} On the evening of November 22, 2003, Harding, his wife, and another couple were driving home from Bargo's Grill, a bar located in Washington Township, Ohio, where they had spent between 7-8 hours watching a football game. Harding, who admitted to consuming approximately three 23-ounce beers and half of a 12-ounce beer before leaving the bar, was the driver of the vehicle. Harding testified that on the advice of Steve Baker, a passenger in the vehicle, he turned off Highway 725 onto Normandy Road to reach Interstate 675 more quickly. Harding testified that he had never driven on Normandy Road before that day.
 {¶ 4} In the direction Harding was traveling, Normandy Road crosses over Paragon Road. There is a stop sign on Normandy that allows vehicles traveling on Paragon the right of way. There is also a "stop ahead" sign on Normandy approximately 200 yards before the intersection. As Harding was driving down Normandy, he drove through the stop sign at the intersection at Paragon and Normandy. At the same time Dr. Ozden Ochoa was traveling down Paragon after leaving her apartment nearby. When Ochoa passed through the intersection, Harding struck the front passenger side of her vehicle. The initial collision spun Ochoa's vehicle around so that it struck Harding's vehicle a second time. Both vehicles were traveling between 30-40 miles per hour at the time of the accident. It is undisputed that the accident occurred as a result of Harding's negligence. Ochoa suffered severe injuries in the collision and almost died at the scene.
 {¶ 5} Immediately after the accident, Harding exited his vehicle. While he was walking around, Deputy Christopher Soto of the Montgomery County Sheriff's Office arrived at the scene. Once Deputy Soto became aware Harding was the driver of one of the vehicles involved in the crash, he requested that Harding complete a witness statement. Deputy Soto testified that after obtaining Harding's written statement which was both sloppy and childlike, Harding admitted to having "a few" alcoholic beverages. He also noticed that Harding smelled of alcohol. Deputy Soto then administered two field sobriety tests, the horizontal gaze nystagmus test and the nine-step walk and turn test. While the trial court suppressed the results of the horizontal gaze test, Deputy Soto was allowed to testify that Harding lost his balance several times during the walk and turn test and quit before completing it, asserting that he was too nervous to continue.
 {¶ 6} Based on his observations, Deputy Soto arrested Harding for driving under the influence and took him to the Centerville Police Department in order to administer a breathalyzer test. Approximately one-hour after the collision, Harding was administered the breathalyzer exam. The breathalyzer registered Harding's breath/alcohol level to be .184 grams of alcohol per 210 liters of breath. Harding was then transported to the Montgomery County Jail.
 {¶ 7} After a jury trial, Harding was convicted of aggravated vehicular assault pursuant to R.C. § 2903.08(A)(1)(a). It is from this judgment that Harding now appeals.
 II {¶ 8} Harding's first assignment of error is as follows:
 {¶ 9} "THE TRIAL COURT ERRED IN PERMITTING THE IMPROPER AND PREJUDICIAL ADMISSION OF BREATHALYZER TEST RESULTS WITHOUT THE REQUIRED EXPERT TESTIMONY AND IN FAILING THEREAFTER TO GRANT A MISTRIAL THEREBY DENYING APPELLANT HARDING HIS RIGHTS TO DUE PROCESS OF LAW AND TO A FAIR TRIAL AS GUARANTEED BY THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 9 AND 16 OF THE OHIO CONSTITUTION."
 {¶ 10} In his first assignment, Harding contends that the trial court erred in admitting his breathalyzer test results when the State failed to present any expert testimony correlating the test results to the possibility that Harding was under the influence at the time of the accident. In support of his assertion, Harding cites the Ohio Supreme Court case, State v.French (1994), 72 Ohio St.3d 446, 452, 650 N.E.2d 887, which stands for the proposition that it is improper to admit a breathalyzer test result unless the State also lays a foundation and introduces expert testimony in order to relate the test result "to a common understanding of what is to be under the influence of alcohol." Harding argues that without expert testimony, any probative value to be gained from disclosure of his breath test result was substantially outweighed by the danger of unfair prejudice because the jurors would speculate about the test result's meaning without focusing on his conduct at the time of the accident.
 {¶ 11} In order to meet its burden in a prosecution under R.C. § 4511.19(A)(1), the State must prove beyond a reasonable doubt that the defendant operated a motor vehicle while "under the influence." See R.C. § 4511.19(A)(1). The term "under the influence" means that "the defendant consumed some [alcohol], * * * in such a quantity, whether small or great, that it adversely affected and appreciably impaired the defendant's actions, reactions, or mental processes under the circumstances then existing * * *." 4 Ohio Jury Instructions 6, Section 545.25; see, also, State v. Hardy (1971), 28 Ohio St.2d 89,276 N.E.2d 247.
 {¶ 12} In State v. Lind (June 1, 1994), Hamilton App. No. C930499, the court held that although the admission of the breath test results in a prosecution under R.C. § 4511.19(A)(1) was error without expert testimony to explain said results, the error was harmless where the defendant admitted drinking, and other evidence presented firmly established that the defendant was intoxicated. In the case before us, the State introduced Harding's breath test results without any expert testimony concerning their significance. However, Harding admitted to consuming at least three 23-ounce beers and half of a 12-ounce beer over 7-8 hours prior to the accident.
 {¶ 13} At the close of trial, the court gave the jury a limiting instruction with respect to results of Harding's breath test:
 {¶ 14} "Evidence of the breath test administered to the Defendant may only be considered as evidence indicating that the Defendant had or had not consumed some alcohol. You may not, on the evidence of the test alone, conclude or infer that the Defendant was or was not under the influence of alcohol."
 {¶ 15} The real difficulty presented herein is that the jury was left to conjecture about the significance of a .184 test result in weighing all of the other indicia of alcohol consumption and impaired driving. Thus, admitting the test without an expert coupled with a less than cogent instruction was error.
 {¶ 16} However, after a thorough review of the record, we conclude that the error was harmless because there was other significant evidence of Harding's guilt, aside from the breath test results. Appellant admitted to the arresting officer that he had consumed alcohol immediately prior to the accident, and the arresting officer, as well as the officer who administered the breathalyzer test, observed and testified to critical issues in a case prosecuted under 4511.19(A)(1), namely that Harding smelled of alcohol, his inability to complete the field sobriety tests, his sloppy and childlike handwriting on his written accident statement, and that he appeared intoxicated to the officers based on their experience with suspected drunk drivers.
 {¶ 17} Harding's first assignment of error is overruled.
 III {¶ 18} Harding's second assignment of error is as follows:
 {¶ 19} "THE TRIAL COURT ERRED IN PERMITTING EVIDENCE OF IRRELEVANT AND PREJUDICIAL TESTIMONY FROM THE ACCIDENT VICTIM THEREBY DENYING APPELLANT HARDING HIS RIGHTS TO DUE PROCESS OF LAW AND TO A FAIR TRIAL AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION."
 {¶ 20} In his second assignment, Harding contends that the trial court erred when it allowed the accident victim, Dr. Ochoa, to testify concerning the nature and extent of the injuries she suffered in the car accident. Specifically, Harding argues that since he agreed to stipulate that he was driving and caused an accident resulting in serious physical harm, the emotional impact of Dr. Ochoa's testimony substantially outweighed its probative value, thereby inducing the jury to decide the case on an improper basis of pity and sympathy.
 {¶ 21} To be relevant and therefore admissible, evidence must have a tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less than it would be without the evidence." Evid. R. 401. Even if the evidence is relevant, it must be excluded under Evid. R. 403(A) "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." However, despite the mandatory terms of Evid. R. 403(A), when considering evidence under that rule, the trial court is vested with broad discretion and an appellate court should not interfere absent a clear abuse of that discretion. State v. Allen (1995), 73 Ohio St.3d 626, 632-633,653 N.E.2d 675, citing State v. Morales (1987),32 Ohio St.3d 252, 257-258, 513 N.E.2d 267, 273-274.
 {¶ 22} The trial court must engage in a balancing test to ascertain whether the probative value of the offered evidence outweighs its prejudicial effect. State v. Maurer (1984),15 Ohio St.3d 239, paragraph seven of the syllabus. In order for the evidence to deemed inadmissible, its probative value must be minimal and its prejudicial value great. Morales, supra at 258. Additionally, relevant evidence which is challenged as having probative value that is substantially outweighed by its prejudicial effects "should be viewed in a light most favorable to the proponent of the evidence, maximizing its probative value and minimizing any prejudicial effect" to the party opposing its admission. Maurer, supra at 265.
 {¶ 23} In allowing Dr. Ochoa to testify, the trial court limited her testimony to a recitation of the nature and extent of her injuries as she experienced them. The trial court did not allow Dr. Ochoa to testify concerning any medical diagnoses that her doctors provided. It is clear that the trial court was confident that the limitations placed on Dr. Ochoa's testimony were sufficient to minimize any prejudicial effect that it would have on the jury. In describing her condition after she regained consciousness in the hospital, Dr. Ochoa testified briefly with respect to the injuries she suffered. In particular, she related her loss of cognitive skills as well as her inability to control her discharge of bodily fluids as "very scary" for her. At one point during her testimony, the State's attorney asked Dr. Ochoa if she needed to take a break before continuing. The trial court also allowed the State to elicit testimony from Dr. Ochoa with respect to how much she cared for her vehicle which was demolished in the accident. Harding argues that this testimony was prejudicial and irrelevant in that it unfairly played on the sympathy of the jurors.
 {¶ 24} Both Evid. R. 103(A) and Crim. R. 52(A) provide that error is harmless unless the substantial rights of a defendant have been affected. The test for harmless nonconstitutional error is whether "there is substantial evidence to support the guilty verdict even after the tainted evidence is cast aside * * *."State v. Cowans (1967), 10 Ohio St.2d 96, 104. The test for harmless constitutional error is whether "`beyond a reasonable doubt' * * * the remaining evidence alone comprises `overwhelming' proof of defendant's guilt." State v. Williams
(1983), 6 Ohio St.3d 281, 290, certiorari denied (1983),464 U.S. 1020, quoting Harrington v. California (1969), 395 U.S. 250,254. However, a nonconstitutional error may rise to the level of constitutional error if such error amounts to "a violation of the appellant's right to a fair trial as that term is understood under the due process clause of the Fourteenth Amendment." Statev. Davis (1975), 44 Ohio App.2d 335, 348, 338 N.E.2d 793.
 {¶ 25} While we agree that it was error for the trial court to allow Dr. Ochoa to testify concerning the nature and extent of her injuries given the stipulation accepted by the State, the introduction of such evidence was harmless when considering the other significant evidence adduced at trial indicative of Harding's guilt. The bulk of the evidence introduced at trial centered around whether Harding was under the influence and to what extent his alleged GERD condition affected the results of the breathalyzer test. The introduction of Dr. Ochoa's testimony regarding her injuries, while unnecessary, was harmless error under these circumstances.
 {¶ 26} Harding's second assignment of error is overruled.
 IV {¶ 27} Harding's third assignment of error is as follows:
 {¶ 28} "THE TRIAL COURT ERRED IN EXCLUDING RELEVANT EXPERT TESTIMONY AS TO THE VALIDITY OF THE APPELLANT'S PARTICULAR BREATHALYZER TEST THEREBY DENYING APPELLANT HARDING HIS RIGHT TO DUE PROCESS OF LAW AND TO A FAIR TRIAL AS GUARANTEED BY THEFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION."
 {¶ 29} (A)The Trial Court Did Not Err in Excluding Dr. Staubus From Testifying As To The Dual Breathalyzer Test Recommendation.
 {¶ 30} (B)The State v. Vega Decision Is Not Unconstitutional And Can be Utilized To Bar A Defense Expert From Attacking the Reliability Of A Breathalyzer Test On A Suspect With GERD.
 {¶ 31} In his third assignment, Harding contends that the trial court erred when it precluded his defense expert, Dr. Staubus from testifying with respect to the National Safety Council Committee on Alcohol and Other Drugs' recommendations regarding the administering of a second breath test for a suspected drunk driver. Harding argues that Dr. Staubus should have been allowed to provide the entire bases for his opinion that Harding's breath test was inaccurate due to his GERD condition. We disagree.
 {¶ 32} A defendant may not utilize expert testimony to attack the general reliability of breathalyzers since the General Assembly has legislatively provided for the admission of such tests if analyzed in accordance with the methods approved by the Director of Health. State v. Vega (1984), 12 Ohio St.3d 185,465 N.E.2d 1303. However, a defendant is entitled to attack the accuracy of his specific test results. Columbus v. Day (1985),24 Ohio App.3d 173, 174, 493 N.E.2d 1002.
 {¶ 33} In the instant case, Dr. Staubus was clearly allowed to offer his expert opinion that Harding's GERD condition contaminated the breath sample and rendered the specific test result inaccurate. In other words, he was allowed to challenge the accuracy of the single breath test. A thorough review of the record reveals that Dr. Staubus was also allowed to opine that Harding should have been given a second breath test in order to confirm the results of the first test.
 {¶ 34} The trial court precluded Dr.Staubus from testifying to the findings of the National Safety Council Committee on Alcohol and Other Drugs' findings and recommendations that police agencies give a second breath test to confirm the first. Dr. Staubus was also not allowed to testify with respect to other states' procedures regarding the administering of a second test. The trial court limited Dr. Staubus' testimony insofar as it challenged the reliability of breath tests that are given in conformity with the regulations put in place by the Ohio Director of Health. While Dr. Staubus was allowed to testify regarding the accuracy of the specific results of Harding's breath test, the trial court properly limited his testimony under the clear and unequivocal holding issued by the Supreme Court in Vega, supra, with respect to the reliability of the test.
 {¶ 35} Lastly, Harding asks us to find the holding in Vega,
supra, unconstitutional as it applies to limiting a defense expert from challenging the reliability of a single breath test administered to a suspect with GERD. Not only was this issue not preserved for appeal, but the doctrine of stare decisis prevents us from declaring clear and unequivocal precedent handed down by the Ohio Supreme Court unconstitutional.
 {¶ 36} "The doctrine of stare decisis is designed to provide continuity and predictability in our legal system. We adhere to stare decisis as a means of thwarting the arbitrary administration of justice as well as providing a clear rule of law by which the citizenry can organize their affairs." RockyRiver v. State Emp. Relations Bd. (1989), 43 Ohio St.3d 1, 4-5,539 N.E.2d 103.
 {¶ 37} As previously stated, Harding's expert was allowed to challenge the accuracy of the specific breath test administered to Harding. Dr. Staubus was further allowed by the trial court to opine that a second test was necessary to confirm the results of the first in light of Harding's GERD condition. The jury clearly chose to discount the testimony of Dr. Staubus with respect to how Harding's alleged medical condition may have affected the outcome of the breath test. The Ohio Supreme Court ruling inVega, however, precluded Dr. Staubus from challenging the general reliability of the single breath test administered to Harding, and we will not disturb that precedent.
 {¶ 38} Harding's third assignment of error is overruled.
 V {¶ 39} Harding's fourth assignment of error is as follows:
 {¶ 40} "THE CURRENT STATUTORY SCHEME AND THE OHIO ADMINISTRATIVE HEALTH REGULATIONS WHICH REQUIRE ONLY ONE BREATHALYZER TEST AND ONLY PROHIBIT ORAL INTAKE ARE UNCONSTITUTIONAL AS THEY VIOLATE APPELLANT HARDING'S RIGHTS TO EQUAL PROTECTION AND SUBSTANTIVE DUE PROCESS AS GUARANTEED BY THE U.S. AND OHIO CONSTITUTIONS."
 {¶ 41} In his fourth assignment, Harding contends that Ohio's current statutory scheme requiring only one breath test when a subject is suspected of being intoxicated and the associated procedures administered during the test do not advance the State's interest in ensuring reliable test results. As a result of these unreliable testing procedures, Harding argues that a suspect who suffers from GERD prior to the single test has his right to equal protection and due process violated since application of only one test can result in a false positive reading. Essentially, Harding asks us to find that the current statutory scheme requiring only one breath test unfairly discriminates against those suffering from GERD and is, therefore, unconstitutional.
 {¶ 42} As we have previously stated, Harding was provided the opportunity during trial to challenge the accuracy of the result of the breath test administered to him at the Centerville Police Department. Harding's own expert, Dr. Staubus, was allowed to testify at length that Harding's medical condition caused the breath test to return a false positive result. The trial court, however, precluded Dr. Staubus from testifying on the question of whether breathalyzer tests as administered in Ohio are unreliable because they are only given once, and a second test is not given to confirm the results of the first test.
 {¶ 43} The State maintains that this argument was not preserved for review because at no time during the trial did Harding challenge the constitutionality of the statutory scheme that requires a breathalyzer operator to conduct only one test. In support of this assertion, the State cites State v. Awan
(1986), 22 Ohio St.3d 120, 489 N.E.2d 277, which held in pertinent part:
 {¶ 44} "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal."
 {¶ 45} Contrary to the State's assertion, Harding argues that he did raise the constitutionality of R.C. § 4511.19(D) at the trial level, but the objection was phrased as a general constitutional challenge to the statute, not a specific objection to single breath test requirement. A general challenge to a statute implicates not only rights under the Constitution but is also sufficient to raise due process considerations and avoid waiver. In re M.D. (1988), 38 Ohio St.3d 149, 151.
 {¶ 46} Harding's counsel did advance equal protection and substantive due process challenges to the trial court. Specifically, Harding's counsel stated in pertinent part:
 {¶ 47} "Simply to amplify our position on the statute, we would also claim that to apply this statute without a culpable mental issue in it, and with the mandatory sentence that the statute has, would violate not only the separation of powers under the constitution but also constitutional requirements of substantive and procedural due process, and if not equal protection as well since it categorizes certain types of individuals differently from others." (Trial Tr., p. 195).
 {¶ 48} A close reading of this section of the transcript reveals that Harding's counsel was not making a general constitutional challenge to R.C. § 4511.19(D). Rather, Harding specifically objected to the strict liability nature of the statute as well as the mandatory sentence contained in the statute. This was not a general challenge to the statute's constitutionality. Harding's objection was specific to two elements of the statute and contained no mention of the requirement that only one breath test be administered. Thus, Harding has waived this argument on appeal.
 {¶ 49} Harding next contends that if waiver does apply, then we should find the statute unconstitutional under the plain error doctrine. We disagree.
 {¶ 50} As we have previously noted, the Ohio Supreme Court inState v. Vega (1984), 12 Ohio St.3d 184, stated that the instruments and procedures put in place by the Director of Health are a dependable way to measure blood-alcohol levels. A defendant may attack the accuracy of his specific test result, but may not challenge the general reliability of the legislatively determined test procedure as a valid means of determining blood-alcohol levels. Columbus v. Day (1985), 24 Ohio App.3d 173,493 N.E.2d 1002. The reliability of the testing process is therefore not subject to challenge when the equipment is working properly. Id.
at 174. Through the testimony of Dr. Staubus, Harding was able to challenge the accuracy of his specific test results, but to no avail. In light of the foregoing, we hold that it was not plain error for the trial court to not find that R.C. § 4511.19(D) was unconstitutional with respect to the legislatively approved method of administering one breath test to a suspected drunk driver.
 {¶ 51} Harding's fourth assignment of error is overruled.
 VI {¶ 52} Harding's fifth assignment of error is as follows:
 {¶ 53} "THE TRIAL COURT ERRED CONSTRUING THE AGGRAVATED VEHICULAR ASSAULT STATUTE AS A STRICT LIABILITY OFFENSE AND IMPROPERLY DENYING APPELLANT A JURY INSTRUCTION ON RECKLESSNESS THEREBY DENYING APPELLANT HARDING HIS RIGHTS [TO] DUE PROCESS OF LAW AND TO A FAIR TRIAL AS GUARANTEED BY THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 9 AND16 OF THE OHIO CONSTITUTION."
 {¶ 54} In his fifth assignment, Harding contends that he was entitled to a jury instruction on recklessness before he could be found guilty of aggravated vehicular assault pursuant to R.C. §2903.08(A)(1)(a). Harding argues that the trial court mistakenly construed said statute to impose strict liability, thereby negating the need to prove the mental state of the offender. Harding asserts that the aggravated vehicular assault statute set forth in R.C. § 2903.08(A) does not "specify any degree of culpability" or "plainly indicat[e] a purpose to impose strict criminal liability." See R.C. § 2901.21(B). Thus, the trial court erred by not instructing on recklessness when the aggravated vehicular assault statute required such a finding. We disagree.
 {¶ 55} R.C. § 2903.08(A)(1)(a) states in pertinent part:
 {¶ 56} "(A) No person, while operating or participating in the operation of a motor vehicle, * * * shall cause serious physical harm to another person * * * in any of the following ways:
 {¶ 57} "(1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance."
 {¶ 58} R.C. § 4511.19(A)(1)(a) states in pertinent part:
 {¶ 59} "(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
 {¶ 60} "(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 61} Aggravated vehicular assault requires that a defendant cause serious physical harm to a victim while the defendant is operating a motor vehicle, with the additional requirement that the defendant be under the influence of alcohol, a drug of abuse, or a combination of the two. As we recently stated in State v.Culver (2005), 160 Ohio App.3d 172, 826 N.E.2d 367, R.C. §4511.19(A)(1)(a) imposes strict liability and does not require a culpable mental state. See, e.g., State v. Moine (1991),72 Ohio App.3d 584, 587, 595 N.E.2d 524, State v. Cleary (1986),22 Ohio St.3d 198, 199, 490 N.E.2d 574.
 {¶ 62} The court in Moine observed:
 {¶ 63} "The language of R.C. 4511.19(A)(1) clearly indicates a purpose to impose strict liability, because the overall design of the statute is to protect against hazards to life, limb, and property created by drivers who have consumed so much alcohol that their faculties are impaired. * * * The act of driving a vehicle while under the influence of alcohol (or drugs, or a combination of both) is a voluntary act in the eyes of the law, and the duty to refrain from doing so is one that in the interests of public safety must be enforced by strict criminal liability without the necessity of proving a culpable state of mind." Culver, supra, citing Moine, 72 Ohio App.3d at 587,595 N.E.2d 524.
 {¶ 64} If the State proves that the accused was operating a motor vehicle while under the influence of alcohol when he caused serious physical harm to another, it is irrelevant under R.C. §§4511.19(A) and 2903.08(A)(1)(a) that the accused was driving recklessly when he caused the accident and/or that he was reckless in becoming intoxicated. In the instant case, the State had to prove that Harding was under the influence of alcohol when he drove through the stop sign and caused the accident which seriously injured Ochoa. The State was not required to prove that Harding acted recklessly when he did so or that he was reckless in becoming intoxicated. Thus, it was not error for the trial court to refuse to instruct the jury on the culpable mental state of recklessness.
 {¶ 65} Harding's fifth assignment of error is overruled.
 VII {¶ 66} Harding's sixth assignment of error is as follows:
 {¶ 67} "THE STATUTORILY MANDATED SENTENCE IMPOSED BY THE TRIAL COURT IS UNCONSTITUTIONAL AND VIOLATIVE OF APPELLANT HARDING'S RIGHTS TO EQUAL PROTECTION AS GUARANTEED BY THE U.S. AND OHIO CONSTITUTIONS."
 {¶ 68} In his sixth assignment, Harding contends that the mandatory one-year sentence imposed by the trial court violates his rights to equal protection. Harding was convicted of aggravated vehicular assault, a felony of the third degree that carries a mandatory one-year sentence. Harding asserts that it is a violation of his equal protection rights since there are more serious felonies that do not carry mandatory time. We disagree.
 {¶ 69} Because Harding failed to object to his mandatory sentence as unconstitutional during the sentencing phase of the trial, this assignment will be reviewed under the plain error analysis.
 {¶ 70} The Equal Protection Clause of theFourteenth Amendment to the United States Constitution provides that "no State shall * * * deny to any person within its jurisdiction the equal protection of the laws." In State v. Wilson (1979),58 Ohio St.2d 52, 55-56, 388 N.E.2d 745, the Supreme Court of Ohio stated "* * * if the statutes prohibit identical activity, require identical proof, and yet impose different penalties, then sentencing a person under the statute with the higher penalty violates the Equal Protection Clause."
 {¶ 71} "Under traditional equal protection analysis, class distinctions in legislation are permissible if they bear some rational relationship to a legitimate government objective. Departures from traditional equal protection principles are permitted only when burdens upon suspect classifications or abrigdments of fundamental rights are involved." State ex rel.Vana v. Maple Hts. City Council (1990), 54 Ohio St.3d 91, 92,561 N.E.2d 909, 911, citing Clements v. Fashing (1982),457 U.S. 957, 963, 102 S.Ct. 2836, 2843-2844. Under rational basis scrutiny, legislative distinctions are invalid only if they bear no relation to the state's goals, and no ground can be conceived to justify them. Fabrey v. McDonald Village Police Department
(1994), 70 Ohio St.3d 351, 353, 639 N.E.2d 31, 33.
 {¶ 72} In the instant case, it was clearly not plain error for the trial court to sentence Harding to the mandatory one-year prison sentence for aggravated vehicular assault. "The comparative gravity of criminal offenses, and whether their consequences are more or less injurious, are matters for the state itself to determine." Collins v. Johnston (1915),237 U.S. 502, 510, 35 S.Ct. 649, 653. The legislature has a rational basis for penalizing those who drive while under the influence and cause serious physical harm to others. It is clearly within the province of the General Assembly to classify the offense of aggravated vehicular assault as one whose penalty warrants a mandatory prison sentence.
 {¶ 73} Harding's sixth assignment of error is overruled.
 VIII {¶ 74} Harding's seventh assignment of error is as follows:
 {¶ 75} "THE STATUTORILY MANDATED SENTENCE IMPOSED BY THE TRIAL COURT IS UNCONSTITUTIONAL AND VIOLATIVE OF APPELLANT HARDING'S RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT AS GUARANTEED BY THE U.S. AND OHIO CONSTITUTIONS."
 {¶ 76} In his seventh assignment of error, Harding contends that the mandatory one-year sentence imposed by the trial court constitutes cruel and unusual punishment. We disagree.
 {¶ 77} The Eighth Amendment to the United States Constitution provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." See, also, Section 9, Article I of the Ohio Constitution. In addition to protecting individuals from punishment such as torture, the Eighth Amendment has been invoked to prohibit punishment that is disproportionate to the crime committed. State v. Weibrecht (1999), 86 Ohio St.3d 368, 370.Eighth Amendment violations are rare, and instances of cruel and unusual punishment are limited to those punishments, which, under the circumstances, would be considered shocking to any reasonable person. Id., citing McDougle v. Maxwell (1964),1 Ohio St.2d 68, 70. The punishment must be so greatly disproportionate to the offense that it shocks the sense of justice of the community.Id., citing McDougle, supra.
 {¶ 78} As we have already noted, all legislative enactments enjoy a strong presumption of constitutionality. Weibrecht,86 Ohio St.3d at 370. Moreover, any reasonable doubt as to the constitutionality of a statute must be resolved in favor of the General Assembly's power to enact the statute. State v.McDonald (1987), 31 Ohio St.3d 47, 48. The party asserting the unconstitutionality of a statute must prove this assertion beyond a reasonable doubt. State v. Thompkins (1996),75 Ohio St.3d 558, 560.
 {¶ 79} In the case before us, Harding has failed to demonstrate that the one-year mandatory sentence constitutes cruel and unusual punishment. Harding compares the aggravated vehicular assault statute which carries a mandatory sentence to other statutes which also prohibit causing serious physical harm but do not carry a mandatory sentence. Harding also points out that a conviction for involuntary manslaughter while under the influence carries the same mandatory one-year sentence as a conviction for aggravated vehicular assault. While he states that he does not wish to minimize serious physical harm, Harding opines that it does not rise to the same level as an individual's death, and thus, a mandatory sentence is not warranted. This argument is irrelevant.
 {¶ 80} A sentence that is within the statutory limitations is not excessive and does not constitute cruel and unusual punishment. State v. Juliano (1970), 24 Ohio St.2d 117, 120. After affording the aggravated vehicular assault statute the benefit of the presumption of constitutionality to which it is entitled, we find that the mandatory sentence the legislature has prescribed is not so disproportionate as to shock the sense of justice of the community. State v. Keller (June 1, 2001), Montgomery App. No. 18411. Thus, it was not plain error for the trial court to impose a mandatory one-year sentence in the instant case.
 {¶ 81} Harding's seventh assignment is overruled.
 IX {¶ 82} Harding's eighth assignment of error is as follows:
 {¶ 83} "THE TRIAL COURT ERRED BY ERRONEOUSLY INSTRUCTING THAT IT COULD DETERMINE PUNISHMENT BASED UPON ADDITIONAL INFORMATION THEREBY VIOLATING APPELLANT HARDING'S RIGHTS TO A FAIR TRIAL AND A TRIAL BY JURY (U.S. CONST., AMENDS. V, XIV; OHIO CONST., ART.II, SEC. 5)."
 {¶ 84} In his eighth assignment, Harding contends that the trial court erred when it provided the jury with the following preliminary instruction:
 {¶ 85} "If the Defendant is found guilty, it then becomes the duty of the Court to determine, within the limits set by the law, what the Defendant's penalty should. The Court makes this decision after the benefit of an investigation which gives the Court a large amount of information that is not available to you as jurors."
 {¶ 86} Defense counsel objected to this instruction, arguing that the trial court incorrectly stated that it had discretion to determine the duration of Harding's sentence when a minimum mandatory requirement was in place that limited any discretion on the part of the trial court.
 {¶ 87} In its final instructions to the jury, the trial court stated:
 {¶ 88} "In the event you find the Defendant guilty, the duty to determine punishment is placed, by law, upon the judge." OJI 413.60(1).
 {¶ 89} After this instruction, Harding renewed his original objection.
 {¶ 90} Harding argues that both the trial court's preliminary instruction and final instruction were misstatements of law that suggested that Harding's sentence was entirely within the judge's control and that no statutory minimum or maximum sentence applied. Harding asserts that the jury may have reached a different verdict had it been instructed that the trial court's discretion was statutorily limited to a prescribed range of mandatory sentences. We disagree.
 {¶ 91} Initially, it should be noted that in this assignment, Harding does not argue that the sentence imposed by the trial court was incorrect. He only argues that the instructions were incorrect statements of law that were potentially misleading to the jury. The instructions provided by the trial court were standard Ohio Jury Instructions. R.C. § 2903.08(D)(1) reads as follows:
 {¶ 92} "The court shall impose a mandatory prison on an offender who is convicted of or pleads guilty to a violation of division (A)(1) of this section."
 {¶ 93} Although no discretion existed with respect to the mandatory nature of the sentence, the trial court retained the authority to impose a sentence between a range of one and five years. Thus, the trial court did not mislead the jury when it stated that it possessed the authority to determine the duration of Harding's sentence within the limits set by law.
 {¶ 94} Harding's eighth assignment of error is overruled.
 X {¶ 95} Harding's ninth and final assignment of error is as follows:
 {¶ 96} "THE MANIFEST WEIGHT OF THE EVIDENCE DOES NOT SUPPORT APPELLANT HARDING'S CONVICTION FOR AGGRAVATED VEHICULAR ASSAULT."
 {¶ 97} In his ninth and final assignment, Harding contends the verdict rendered by the jury was against the manifest weight of the evidence. We disagree.
 {¶ 98} When considering a claim that a conviction is against the manifest weight of the evidence, the reviewing court must dutifully examine the entire record, weigh the evidence and consider the credibility of the witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79, 80,434 N.E.2d 1356, 1357. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212. Once a reviewing court has finished its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547. If the state presented substantial evidence upon which the trier of fact could reasonably conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, a reviewing court will not reverse the judgment of conviction as against the manifest weight of the evidence. State v. Eley (1978), 58 Ohio St.2d 169,383 N.E.2d 132.
 {¶ 99} In support of his final assignment, Harding points out numerous instances where the evidence clearly demonstrates that he was not under the influence at the time of the accident. First, Harding argues that the only field sobriety test he performed which was admissible at trial, the nine-step walk and turn test, was incorrectly administered by Deputy Soto. Harding also asserts that he did not finish the walk and turn test because he was suffering from severe anxiety occasioned by his wife's injury as well as the injuries to Dr. Ochoa, the driver of the other vehicle involved in the accident.
 {¶ 100} Second, Harding argues that the fact that he admitted to Deputy Soto that he had "a few" drinks and that he smelled of alcohol does not, in and of itself, establish that he was adversely affected or noticeably impaired. Harding also notes that his "childlike" writing on the accident information form was caused by his dyslexia and left-handedness, not because he was under the influence. Harding contends that he did not exhibit the "classic" symptoms of intoxication such as irritability or uncooperativeness. Rather, Harding asserts that the testimony demonstrated that he was cooperative and polite with the police officers he came into contact with on the night of the accident.
 {¶ 101} Lastly, Harding contends that evidence was presented at trial that demonstrated that he suffered from GERD which resulted in a false positive reading of.184 grams of alcohol per 210 liters of breath. Harding points to testimony from his expert, Dr. Staubus, who stated that considering the amount of alcohol he consumed, the amount of food he consumed, the body size of Harding, and his medical condition, he would be well within the range of sobriety.
 {¶ 102} After a review of the testimony adduced at trial, we find substantial, competent, credible evidence upon which the trier of fact could reasonably conclude that the State established beyond a reasonable doubt that Harding was driving under the influence of alcohol when he collided with Dr. Ochoa on the evening of November 22, 2004. The jury had the opportunity during trial to listen to and weigh the evidence offered by Harding as well as the State. While Harding offered a comprehensive defense to the charges against him, ample evidence was adduced that, if believed, supported the State's theory that Harding was intoxicated when he caused the accident. Deputy Soto testified that Harding admitted to him that he consumed alcohol, and Deputy Soto stated that Harding smelled of alcohol after the wreck. Deputy Soto testified that Harding was unable to remember his social security number, and he had great difficulty completing the accident report. All of these factors, including evidence that Harding chose not to complete the walk and turn test, support Deputy Soto's opinion that Harding was intoxicated when the accident occurred. Lastly, the State presented evidence that Harding's GERD was not diagnosed until approximately three months after the accident. Moreover, expert testimony was adduced at trial which stated that Harding's GERD would not significantly affect the outcome of a breathalyzer test, thereby contradicting Dr. Staubus' testimony. Issues relating to the credibility of witnesses and the weight to be given are primarily for the trier of fact. DeHass, supra. The trier of fact is free to believe all, part, or none of the testimony of each witness who appears before it. State v. Awan (1986), 22 Ohio St.3d 120, 123,489 N.E.2d 277.
 {¶ 103} Clearly, the jury in the case before us chose to believe the State's version of the facts. We cannot say that the trier clearly lost its way and created such a manifest miscarriage of justice that Harding's conviction must be reversed.
 {¶ 104} Harding's final assignment of error is overruled.
 XI {¶ 105} All of Harding's assignments of error having been overruled, the judgment of the trial court is affirmed.
Grady, P.J. and Brogan, J., concur.