JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, David Clark, appeals his conviction from the Cuyahoga County Court of Common Pleas. Finding no error in the proceedings below, we affirm.
 {¶ 2} At trial, Lori Casciani testified that on May 7, 2005, at approximately 5:00 p.m. she stopped to get gasoline at a Speedway station on Lorain Road, in North Olmsted. While she was filling her tank, she heard a lot of noise and observed a white van pulling up to the pump next to her. Casciani testified that she observed the driver fall out of the van onto the ground. She testified that he had trouble getting up and walking to the back of the van. She said he had to use the van to support himself as he walked to the rear of the van to fill his tank. Casciani testified that Clark could not get his gas cap off and began to swear. She also testified that he spilled gasoline all over the ground. At that point, Casciani and other patrons ran into the station out of fear due to the spilling gasoline.
 {¶ 3} Casciani called 911 because Clark appeared to be intoxicated. She continued to observe Clark fall several more times and stumble into the station. After entering the station, Clark dropped his money all over the floor and nearly fell while trying to pick it up. Casciani testified that he dumped his money on the counter, telling the clerk to count it because he could not. She testified that another Speedway employee helped Clark walk to his van. *Page 4 
 {¶ 4} Casciani called 911 again when Clark began to drive out of the station before the police arrived. She testified that she watched him drive his van up to the left side of another car that was waiting to turn left at the traffic light. The car had its turn signal on. Then the police arrived on scene. At trial, Casciani identified Clark as the man she saw that day.
 {¶ 5} Officer Goodwin responded to the 911 dispatch. When he arrived at the Speedway, he observed Clark's van waiting to exit. Officer Goodwin parked his police vehicle in front of Clark's van. Officer Goodwin testified that he approached the driver, Clark, and advised him of why he was stopping him. Officer Goodwin could smell a strong odor of alcohol emanating from Clark. He testified that when Clark stepped from the van, he was swaying and staggering. Officer Goodwin testified that Clark's speech was mumbled, his appearance was dirty, and he had bloodshot eyes.
 {¶ 6} Officer Goodwin testified that Clark failed all three field sobriety tests and refused to take the breathalyzer.
 {¶ 7} In Clark's defense, Terry Stec testified that Clark worked at Stec's home all day remodeling his kitchen. Stec testified that Clark did not consume any drugs or alcohol at Stec's house that day. Stec stated that after Clark worked all day, Stec bought him a beer at a local bar. Stec testified that Clark had two beers and then left. Stec testified that he was surprised when he heard Clark had been *Page 5 
arrested and charged with a DUI minutes after Clark left the bar where they were together.
 {¶ 8} Clark was convicted of operating a motor vehicle under the influence of alcohol (OVI) with five prior convictions in violation of R.C. 4511.19. He was sentenced to five years in prison. Clark appeals, advancing five assignments of error for our review.
 {¶ 9} "I. The evidence was insufficient to support a finding of guilt."
 {¶ 10} Under this assignment of error, Clark argues that there was insufficient evidence that he was under the influence of alcohol. Clark points out that the state presented no scientific evidence of breath, blood, or urine to prove he was under the influence of alcohol.
 {¶ 11} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 12} In order to meet its burden in a prosecution under R.C.4511.19(A)(1), the state must prove beyond a reasonable doubt that the defendant operated a motor vehicle while "under the influence." See R.C.4511.19(A)(1). The term "under the influence" means that "the defendant consumed some [alcohol], * * * in *Page 6 
such a quantity, whether small or great, that it adversely affected and appreciably impaired the defendant's actions, reactions, or mental processes under the circumstances then existing * * *." 4 Ohio Jury Instructions 6, Section 545.25; see, also, State v. Hardy (1971),28 Ohio St.2d 89; State v. Harding, Montgomery App. No. 20801,2006-Ohio-481.
 {¶ 13} It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated. State v. Schmitt, 101 Ohio St.3d 79, 83,2004-Ohio-37, citing Columbus v. Mullins (1954), 162 Ohio St. 419, 421. See, also, State v. McKee, 91 Ohio St.3d 292, 296, 2001-Ohio-41. "An opinion with reference to intoxication is probably one of the most familiar subjects of nonexpert evidence, and almost any lay witness, without having any special qualifications, can testify as to whether a person was intoxicated. It follows that, where one says that in his opinion a person is intoxicated, he is really stating it as a fact rather than an expert opinion." Mullins, 162 Ohio St. at 421-422. Such lay testimony is often crucial in prosecuting drunk driving cases.Schmitt, 101 Ohio St.3d at 83. In addition, courts have recognized that "to prove impaired driving ability, the state can rely on physiological factors (e.g., slurred speech, bloodshot eyes, odor of alcohol) and coordination tests (e.g., field sobriety tests) to demonstrate that a person's physical and mental ability to drive is impaired." Id., quoting, State v. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528. Finally, "[t]he refusal of one accused of intoxication to take a reasonably reliable chemical *Page 7 
test for intoxication may have probative value on the question as to whether he was intoxicated at the time of such refusal." City ofWesterville v. Cunningham (1968), 15 Ohio St.2d 121, at paragraph one of the syllabus.
 {¶ 14} In this case, Casciani, a lay witness, testified that she observed Clark drive up to a gas pump located right next to her. She testified that Clark fell onto the ground when he exited his vehicle, that he could not walk to the rear of the van without using the van for support, and that he fell a number of times. Casciani testified that he appeared dirty and disheveled, that he could not get his gas cap off, and that he swore repeatedly. She testified that he spilled gas from the fuel pump hose onto the ground, that he dropped his money all over the floor in the station, that he almost fell again while picking it up, and that he then could not count his own money. Casciani testified that Clark appeared to be intoxicated, so she called 911.
 {¶ 15} Officer Goodwin testified that he smelled a strong odor of alcohol coming from Clark and his vehicle, that Clark fumbled through his wallet, that his eyes were red and bloodshot, and that his speech was "mumbled" and with "thick tongue." Officer Goodwin testified that Clark failed the one-legged stand, the walk and turn, and the horizontal gaze nystagmus tests. Officer Goodwin testified that Clark swayed and staggered, that he admitted to having a couple of beers, and that Clark refused to submit to a breathalyzer.
 {¶ 16} Finally, the state introduced a videotape recording of Clark performing and failing the field sobriety tests. *Page 8 
 {¶ 17} We find that there was sufficient evidence that Clark was impaired and under the influence of alcohol. Accordingly, Clark's first assignment of error is overruled.
 {¶ 18} "II. The verdict was against the manifest weight of the evidence."
 {¶ 19} Under this assignment of error, Clark argues that his conviction is against the manifest weight of the evidence because there was no evidence that his driving was impaired or that he was under the influence of alcohol.
 {¶ 20} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Leonard, 104 Ohio St.3d 54, 68,2004-Ohio-6235 (internal quotes and citations omitted).
 {¶ 21} In State v. Evans (1998), 127 Ohio App.3d 56, the Eleventh District Court of Appeals outlined the physical factors or observations that would support probable cause to arrest in an OVI. These same factors may be considered by the trier of fact to determine whether the defendant was driving while impaired. These factors include the following: *Page 9 
 "(1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning);
 (2) the location of the stop (whether near establishments selling alcohol);
 (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.);
 (4) whether there is a cognizable report that the driver may be intoxicated;
 (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.);
 (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.).
 (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath;
 (8) the intensity of that odor, as described by the officer (`very strong,' `strong,' `moderate,' `slight,' etc.);
 (9) the suspect's demeanor (belligerent, uncooperative, etc.);
 (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and
 (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given." Id. at 63, fn2.
 {¶ 22} As outlined above, the record here reflects that the citizen witness and officer Goodwin observed Clark's impaired state. Clark appeared dirty and disheveled, fell on the ground, and couldn't get his gas cap off. He was spilling gas, swearing, and was unable to stand or walk without support. He dropped money on the floor of the station and could not count his own money. Further, Clark had a strong odor of alcohol on his person, had bloodshot eyes, and mumbled. All of these factors could be considered by the trier of fact to find that Clark was impaired. *Page 10 
 {¶ 23} After examining the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find that the jury did not lose its way when it found Clark guilty of operating a motor vehicle under the influence of alcohol. Accordingly, Clark's second assignment of error is overruled.
 {¶ 24} "III. Counsel was ineffective in failing to file a motion to suppress."
 {¶ 25} Clark complains that defense counsel should have filed a motion to suppress the traffic stop in this case. Clark claims that the stop was improper because the officer did not have probable cause to believe that Clark committed a traffic violation. Clark argues that the officer was required to corroborate the caller's tip because the caller was an anonymous informant.
 {¶ 26} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent.State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102. *Page 11 
 {¶ 27} "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." State v. Gibson (1980), 69 Ohio App.2d 91, 95.
 {¶ 28} To justify a particular intrusion, the officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."Terry v. Ohio (1968), 392 U.S. 1, 21. A police officer need not always have knowledge of the specific facts justifying a stop and may rely, therefore, upon a police dispatch or flyer. City of Maumee v.Weisner (1999), 87 Ohio St.3d 295, 297, citing United States v.Hensley (1985), 469 U.S. 221, 231. Where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.Maumee, 87 Ohio St.3d at paragraph 1 of the syllabus. A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability. Id.
 {¶ 29} Where, as here, the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. See id. The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. Factors considered "highly relevant in determining the *Page 12 
value of [the informant's] report" are the informant's veracity, reliability, and basis of knowledge. Id. at 328, quoting Illinois v.Gates (1983), 462 U.S. 213, 230.
 {¶ 30} A police officer necessarily relies on information he receives over the police radio, and it is his duty to act when he receives that information. State v. Carstensen (Dec. 18, 1991), Miami App. No. 91-CA-13, citing State v. Fultz (1968), 13 Ohio St.2d 79, 81. In the present case, the police dispatcher relayed information which had been received in two separate 911 calls from a local citizen. See id. Information from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable. Gates, 462 U.S. at 233-234. The ordinary citizen is on a different footing from a police informant who is himself implicated in criminal conduct; the credibility and reliability of the latter must be apparent before the information can be acted upon.State v. Adamson (Nov. 17, 1987), Greene App. No. 87-CA-13, unreported.
 {¶ 31} In this case, Officer Goodwin responded to a 911 call from a citizen informant who personally observed Clark's drunken behavior and gave a description of Clark's van and behavior to dispatch. Although it is unclear from the trial transcript whether Casciani identified herself to the 911 operator or did so at a later date, it is of no consequence to this case. The information Casciani relayed constituted an eyewitness account of the crime. In addition, her call was motivated by concern for her personal safety, as well as the safety of other motorists, not by *Page 13 
dishonest or questionable motives. In fact, Casciani called 911 twice because Clark was leaving the station and the police had not yet arrived to stop him.
 {¶ 32} In Carstensen, supra, the stop was upheld when a 911 caller gave a description of the car, location, and direction of travel, and relayed that the driver was "obviously drunk," but did not leave a name or phone number. The court stated that "[the officer] was not required to wait until the driver had harmed himself or others before he was allowed to stop the driver to investigate whether in fact he was intoxicated." Id.
 {¶ 33} We find that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity. As a result, defense counsel was not ineffective when he did not file a motion to suppress the stop in this case. Accordingly, Clark's third assignment of error is overruled.
 {¶ 34} "IV. The trial court erred and violated appellant's Fifth Amendment rights in permitting the state to elicit testimony about appellant's post-arrest silence, and counsel was ineffective in failing to object to that testimony."
 {¶ 35} Clark argues that his right to remain silent was violated when the state elicited testimony from the officer that Clark refused to answer any questions after he was advised of his rights. In addition, Clark argues that his attorney was ineffective when he failed to object to this testimony.
 {¶ 36} In Doyle v. Ohio (1976), 426 U.S. 610, 618, the Supreme Court of the United States explained that the Miranda warnings convey an implied assurance to *Page 14 
the accused that the state will not use a defendant's silence against him at trial. "Doyle rests on `the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'" Wainwright v. Greenfield (1986), 474 U.S. 284, 291, quotingSouth Dakota v. Neville (1983), 459 U.S. 553, 565. "Such comments penalize a defendant for choosing to exercise a constitutional right. Prosecutors must therefore take care not to equate the defendant's silence to guilt." State v. Thompson (1987), 33 Ohio St.3d 1, 4.
 {¶ 37} If a court finds a Doyle violation, the court must then determine if the error is harmless under the test set forth underChapman v. California (1967), 386 U.S. 18. State v. Smith, Cuyahoga App. No. 86690, 2006-Ohio-3156. The standard set forth under Chapman requires the state to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" in order for a constitutional error to be ignored as nonprejudicial. Id., quotingChapman, 386 U.S. at 24.
 {¶ 38} Further, in State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus, the Supreme Court of Ohio held that constitutional errors are harmless beyond a reasonable doubt "if the evidence, standing alone, constitutes overwhelming proof of the defendant's guilt." This rule was employed in assessing the prejudicial effect of Doyle errors in State v. Thompson (1987), 33 Ohio St.3d 1. *Page 15 
 {¶ 39} In determining whether the prosecutor's conduct and admission of the post-arrest silence evidence was harmless, this court must consider the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting the defendant's guilt. State v. Gooden, Cuyahoga App. No. 82621, 2004-Ohio-2699; citing State v. Thomas, Hamilton App. No. C-010724, 2002-Ohio-7333.
 {¶ 40} In this case, the state asked Officer Goodwin, "And when you got to the station, did [Clark] take the Breathalyzer?" Officer Goodwin responded by giving a lengthy explanation of the "20-minute waiting period" required before administering the breathalyzer. During that explanation, the officer volunteered that "there's a questionnaire that I ask a bunch of questions, where were you coming from, were you drinking, were you on any medication, when did you sleep last. A lot of general questions. And [Clark] refused to answer any of those questions."
 {¶ 41} Although there was no objection by the defense, failure to object to error, alone, is not sufficient to sustain a claim of ineffective assistance. State v. Fears, 86 Ohio St.3d 329,1999-Ohio-111; State v. Hicks, Cuyahoga App. No. 83931, 2004-Ohio-5223. Further, the state did not belabor the point or argue an inference of guilt from Clark's post-arrest silence. Finally, we find that the evidence, standing alone, constitutes overwhelming proof of Clark's guilt. As a result, Clark's fourth assignment of error is overruled. *Page 16 
 {¶ 42} "V. The trial court erred and abused its discretion by permitting the state to introduce a videotape of the field sobriety tests when the videotape's existence had not been disclosed to the defense until trial began."
 {¶ 43} Finally, Clark claims that the trial court erred in allowing the state to present a videotape of the field sobriety tests when defense counsel was informed on the morning of trial that there was a tape. Clark complains that the state's discovery response did not indicate that there was a tape of the field sobriety tests.
 {¶ 44} In this case, Clark filed a general discovery request, which does not specifically request the production or preservation of any videotape evidence. Arguably, Clark must specifically request videotape evidence. See State v. Acosta, Hamilton App. Nos. C-020767, C-020768, C-020769, C-020770, C-020771, 2003-Ohio-6503; State v. Anderson, Hamilton App. No. C-050382, 2006-Ohio-1568.
 {¶ 45} Nevertheless, in the state's notice of evidence, it does not list the videotape. Although there is nothing in the record to suggest that the prosecution was aware of the videotape, it is clear that Officer Goodwin would have been aware of the videotape. Because "[t]he police are a part of the state and its prosecutional machinery," the knowledge of the detective must be imputed to the state. State v.Wiles, 59 Ohio St.3d 71, 78, quoting State v. Tomblin (1981),3 Ohio App.3d 17, 18. Accordingly, we find that the state failed to comply with Crim.R. 16(B)(1).
 {¶ 46} Next, we must consider whether the admission of the videotape constitutes reversible error. The Ohio Supreme Court has held that a trial court does *Page 17 
not abuse its discretion in admitting such nondisclosed evidence unless it is shown that "(1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." State v.Jackson, 107 Ohio St.3d 53, 79, 2005-Ohio-5981, citing State v.Parson (1983), 6 Ohio St.3d 442, 445; State v. Wiles,59 Ohio St.3d at 79; State v. Heinish (1990), 50 Ohio St.3d 231, 236.
 {¶ 47} We find that Clark has failed to establish reversible error in this case. First, despite the fact that Officer Goodwin's knowledge of the videotape is imputable to the prosecution for purposes of determining a violation of Crim.R. 16, such imputed knowledge is not sufficient to constitute a willful violation of the discovery rules. SeeState v. Wiles, 59 Ohio St.3d at 79. Instead, we must consider the acts of the prosecution itself in making the determination of whether the prosecution "willfully" failed to disclose the statements. See id.;State v. Muszynec, Cuyahoga App. No. 87447, 2006-Ohio-5444. From the record before us, there is no indication that the prosecution willfully failed to disclose the videotape. Second, although Clark argues that the videotape would have benefitted his defense preparation in that he could have filed a motion to suppress or have an expert review it, Clark was not prevented from requesting a continuance to review the tape and obtain an expert. Finally, we do not find that Clark was prejudiced by the introduction into evidence of the videotape. As stated in State v.Wiles, 59 Ohio St.3d at 80, "[N]o prejudice to a criminal defendant results where an objection is *Page 18 
made at trial to the admission of nondisclosed discoverable evidence on the basis of surprise but no motion for a continuance is advanced at that time. In the instant case, appellant sought the most stringent sanction available for violation of Crim.R. 16 even though a continuance would have remedied any harm resulting therefrom." (Internal citations omitted.)
 {¶ 48} Crim.R. 16(E)(3) provides other remedies for discovery violations. Pursuant to the rule, "the court may order [the non-complying] party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." We find that the trial court did not abuse its discretion when it allowed the videotape into evidence.
 {¶ 49} Accordingly, Clark's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 19 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., CONCURS;
 ANN DYKE, J., CONCURS IN JUDGMENT ONLY *Page 1