[Cite as *State v. Blair*, 2013-Ohio-646.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  9-12-14

    v.

MEAGAN BLAIR,                        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion Municipal Court
Trial Court No. TRC 1106722

**Judgment Affirmed**

Date of Decision:   February 25, 2013

APPEARANCES:

    *J.C. Ratliff and Jeff Ratliff*  for Appellant

    *Steven E. Chaffin*   for Appellee

**SHAW, J.**

{**¶1**} Defendant-appellant, Meagan Blair ("Blair"), appeals the March 8, 2012 judgment of the Marion Municipal Court journalizing her conviction by a jury for operation of a vehicle while under the influence ("OVI"), in violation of R.C. 4511.19(A)(1)(a), and operation of a vehicle with a prohibited alcohol concentration in violation of R.C. 4511.19(A)(1)(d), and suspending her driver's license for one year.

{**¶2**} On September 5, 2011, at approximately 2:30 a.m., Trooper Tawanna Young was on patrol when she observed the 2004 Honda driven by Blair and noticed that the rear license plate light on the vehicle was not illuminated. Trooper Young followed Blair and signaled for her to pull over her vehicle. Blair was travelling with a friend in the passenger seat.

{**¶3**} Trooper Young approached Blair, informed her of the reason for the stop, and asked Blair for her driver's license, registration, and proof of insurance. Trooper Young asked Blair to exit the vehicle and directed her to the back of the car so that she could show Blair that her license plate light was inoperable. Blair's car was already turned off, so Trooper Young requested Blair start her car. Blair indicated that the passenger had the keys, however the passenger was unable to locate the keys to start the car.

{¶4} Trooper Young asked Blair to sit in her cruiser while she checked Blair's driving record. Blair complied with the request, was patted down, and then sat in the front seat of the cruiser. At this time, Blair explained to Trooper Young that she had been asleep for almost two hours when she received a phone call from the passenger at 2:00 a.m. requesting Blair pick her up from a bar in Marion. During this conversation, Trooper Young observed a strong odor of alcoholic beverage emanating from Blair's breath. Trooper Young asked Blair if she had anything to drink that night. Blair admitted to consuming two drinks between 10 p.m. and midnight.

{¶5} Trooper Young then proceeded to conduct a Horizontal Gaze Nystagmus test ("HGN") on Blair and observed six out of six clues indicating Blair to be impaired. Next, Trooper Young had Blair recite the alphabet starting at the letter "D" and ending at the letter "W." Blair was unable to complete this task due to skipping the letters between "P" and "W." Trooper Young then conducted additional field sobriety tests. Specifically, Trooper Young asked Blair to complete the walk-and-turn test and observed two out of eight clues indicating impairment. Trooper Young also had Blair complete the one-leg-stand test, which Blair completed correctly with no clues of impairment. Based on the strong odor of alcoholic beverage emanating from Blair's breath, her admission to consuming

two alcoholic beverages, and her performance on the field sobriety tests, Trooper Young determined Blair to be impaired and placed her under arrest for OVI.

{¶6} After being transported to the Multi-County Jail, Blair agreed to submit to a chemical test measuring the concentration of alcohol in her breath. Trooper Young read Blair the BMV form 2255 and administered the test. The first test indicated that an invalid sample was obtained and failed to produce a reading. Sergeant Hunter, Trooper Young's supervisor who was also present at the jail, administered the second test to Blair at Trooper Young's request, after the requisite twenty-minute observation period. This time a valid sample was obtained and the test produced a result of .106 of one gram by weight of alcohol per two hundred ten liters of breath, indicating that the concentration of alcohol detected in Blair's breath exceeded the legal limit.

{¶7} Blair was charged with OVI, in violation of R.C. 4511.19(A)(1)(a), operation of a vehicle with a prohibited alcohol concentration, in violation of R.C. 4511.19(A)(1)(d), failure to wear a seat belt, in violation of R.C. 4513.263(B)(1), and failure to illuminate the rear license plate, in violation of R.C. 4513.05. Blair entered a plea of not guilty to the charges.

{¶8} On October 14, 2011, Blair filed a motion to suppress alleging that Trooper Young lacked probable cause and/or reasonable, articulable suspicion to stop her for a license plate light violation, that Trooper Young did not acquire

probable cause and/or reasonable, articulable suspicion to further detain her to administer the field sobriety tests, and that Trooper Young lacked probable cause to subsequently arrest her for OVI. Blair also claimed that the field sobriety tests were not conducted in accordance with NHTSA standards, and challenged the results of the breathalyzer, alleging the test was not administered in accordance with the Ohio Department of Health Rules and Regulations.

{¶9} On December 22, 2011, a hearing was held on Blair's motion to suppress. The video of the stop was introduced as evidence as well as the testimony of Trooper Young, Sergeant Hunter, and Blair. On December 23, 2011, the trial court issued a judgment entry overruling the motion. The jury trial was set for March 7, 2012.

{¶10} On March 6, 2012, the day before trial, Blair filed a subpoena duces tecum requesting Trooper Young produce for use at trial copies of her call log and copies of her computer log from the date of Blair's arrest. Blair also filed a subpoena duces tecum requesting the Keeper of Records and/or Office Manager at Ralls Automotive to produce for the use at trial the invoice reflecting service performed on Blair's car the day after her arrest. The prosecution subsequently filed a motion to quash. The same day, the trial court granted the prosecution's motion finding compliance with the subpoenas to be unreasonable and oppressive. *See* Crim.R. 17(C).

{¶11} The next day, the jury trial commenced as scheduled and the jury heard evidence pertaining to two counts: OVI and operating a vehicle with a prohibited alcohol concentration. Trooper Young and Sergeant Hunter testified for the prosecution and Blair testified in her defense. The video of the stop was also admitted for the jury to review. The jury found Blair guilty on both counts before it and the prosecution elected for Blair to be sentenced on the OVI conviction. The prosecution subsequently dismissed the seat belt violation. The trial court found Blair not guilty of the rear license plate light violation.

{¶12} On March 8, 2012, the trial court sentenced Blair to ninety days in jail with eighty-four days suspended and imposed a fine of $1,000 with $100 suspended. The trial court also suspended Blair's driver's license for one year beginning on March 8, 2012 and expiring March 8, 2013.

{¶13} Blair now appeals, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS AS (1) THE STOP WAS NOT SUPPORTED BY PROBABLE CAUSE OR A REASONABLE AND ARTICULABLE SUSPICION THE DEFENDANT HAD COMMITTED A TRAFFIC VIOLATION; (2) THE OFFICER DID NOT POSSESS A REASONABLE AND ARTICULABLE SUSPICION JUSTIFYING THE CONTINUED DETENTION OF THE DEFENDANT BEYOND THE SCOPE OF THE INITIAL STOP; (3) THE OFFICER DID NOT POSSESS A REASONABLE AND ARTICULABLE SUSPICION JUSTIFYING THE ADMINISTRATION OF THE FIELD SOBRIETY TESTS; (4) THE FIELD SOBRIETY TESTS AND**

**CHEMICAL TESTS WERE NOT DONE IN SUBSTANTIAL COMPLIANCE WITH NHTSA OR ITS EQUIVALENT AND THE OHIO DEPARTMENT OF HEALTH RULES AND REGULATIONS; AND (5) THE OFFICER DID NOT POSSESS PROBABLE CAUSE TO ARREST THE DEFENDANT.**

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHTS TO CONFRONT THE WITNESSES AND EVIDENCE AGAINST HER, HER RIGHT TO COMPULSORY PROCESS, HER RIGHT TO PRESENT A MEANINGFUL DEFENSE, HER RIGHT TO DUE PROCESS OF LAW, AND HER RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.**

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT VIOLATED DEFENDANT'S RIGHT AGAINST DOUBLE JEOPARDY WHEN THE TRIAL COURT SUSPENDED HER OPERATOR'S LICENSE FOR ONE (1) YEAR WITHOUT CREDITING DEFENDANT FOR THE ALS SUSPENSION [SIC] IMPOSED ON HER AT THE TIME OF HER ARREST.**

*First Assignment of Error*

{¶14} In her first assignment of error, Blair argues that the trial court erred in overruling her motion to suppress. Blair asserts five specific grounds to support her contention.

{¶15} Initially, we note that appellate review of a decision on a motion to suppress evidence presents a mixed question of law and fact. *State v. Bressler*, 3d Dist. No. 15–05–13, 2006–Ohio–611. At a suppression hearing, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a trial court's decision on a motion to suppress, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Dunlap*, 73 Ohio St.3d 308, 314 (1995). We must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of the witnesses," and then independently review whether the trial court applied the correct legal standard. *State v. Anderson*, 100 Ohio App.3d 688, 691 (4th Dist. 1995).

{¶16} At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), paragraph two of the syllabus; *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978), and that it meets Fourth Amendment standards of reasonableness. *Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999).

{¶17} Blair first contends that the trial court erred in denying her motion to suppress because Trooper Young lacked probable cause and/or reasonable,

articulable suspicion justifying the stop of her vehicle. At the suppression hearing, Trooper Young testified that she effectuated the traffic stop because the rear license plate area of Blair's vehicle was not illuminated, which is a traffic violation.

{¶18} The Supreme Court of Ohio has held that "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop * * *." *City of Dayton v. Erickson*, 76 Ohio St.3d 3, syllabus (1996), following *United States v. Ferguson*, 8 F.3d 385 (6th Cir.1993).

{¶19} Trooper Young charged Blair with a traffic violation, in violation of R.C. 4513.05, which specifically provides as follows:

> **(A) Every motor vehicle, trackless trolley, trailer, semitrailer, pole trailer, or vehicle which is being drawn at the end of a train of vehicles shall be equipped with at least one tail light mounted on the rear which, when lighted, shall emit a red light visible from a distance of five hundred feet to the rear, provided that in the case of a train of vehicles only the tail light on the rearmost vehicle need be visible from the distance specified.**
>
> **Either a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear. Any tail light, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted, except where**

**separate lighting systems are provided for trailers for the purpose of illuminating such registration plate.**

**(B) Whoever violates this section is guilty of a minor misdemeanor.**

{¶20} On appeal, Blair contends that the video recorded by the dashboard camera in Trooper Young's cruiser demonstrates that Blair's rear license plate was "visibly illuminated" and therefore did not give Trooper Young a basis to make the stop. (Blair's Brief at 8). This video evidence was played during the suppression hearing and was admitted as evidence for the trial court's review. Our review of this evidence reveals that it is not discernible from the video whether or not Blair's license plate was "visibly illuminated" prior to Trooper Young effectuating the stop. Therefore, the video does not unequivocally demonstrate that Blair's rear license plate was illuminated in compliance with R.C. 4513.05 as Blair contends.

{¶21} On the contrary, at the suppression hearing, Trooper Young testified that she was approximately a block away from Blair's vehicle when she first observed that Blair's rear license plate was not illuminated and then made the decision to follow Blair. Trooper Young further explained that she had a clear and unobstructed view of Blair's vehicle and had "no doubt" in her mind that the light was out. (Supp. Hrg. at 32). Trooper Young testified that she specifically

conducted the traffic stop based on her observation that the rear license plate of Blair's vehicle was not illuminated.

{¶22} Based on the evidence presented at the suppression hearing, we find that the factual determination by the trial court that Blair's rear license plate was not illuminated prior to the stop was supported by competent, credible evidence. Accordingly, we find no error with the determination by the trial court that Trooper Young possessed both probable cause and/or reasonable, articulable suspicion to stop Blair on the basis that a traffic violation had occurred.

{¶23} Next, in her second and third grounds for contending the trial court erred in overruling her motion to suppress, Blair argues that her continued detention exceeded the scope and duration of the stop, and that Trooper Young did not have reasonable, articulable suspicion to conduct the field sobriety tests. The prosecution contends that Trooper Young had reasonable, articulable suspicion that Blair was engaged in criminal activity—i.e., OVI—that would justify her continued detention and the administration of the field sobriety tests.

{¶24} When conducting a stop of a motor vehicle for a traffic violation, an "officer may detain an automobile for a time sufficient to investigate the reasonable, articulable suspicion for which the vehicle was initially stopped." *State v. Smith*, 117 Ohio App.3d 278, 285 (1st Dist. 1996). However, the duration of the stop "is limited to 'effectuate the purpose for which the initial stop was

made.' " *Id*., quoting *State v. Venham*, 96 Ohio App.3d 649, 655 (4th Dist. 1994), citing *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 (1975); *State v. Chatton*, 11 Ohio St.3d 59, 63 (1994). "Thus, when detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning." *Smith* at 285, citing *State v. Keathley*, 55 Ohio App.3d 130 (2d Dist. 1998). This time period also includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *See Delaware v. Prouse*, 440 U.S. 648, 659 (1979).

**{¶25}** The detention of a stopped driver may continue beyond the time frame necessary to conduct the stop for purposes of the traffic violation when "additional facts are encountered that give rise to a reasonable, articulable suspicion [of criminal activity] beyond that which prompted the initial stop[.]" *Smith* at 285, citing *State v. Myers*, 63 Ohio App.3d 765, 771 (2d Dist. 1990); *Venham* at 655. Reasonable articulable suspicion exists when there are " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.' " *State v. Stephenson*, 3d Dist. No. 14-04-08, 2004-Ohio-5102, ¶ 16, quoting *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988).

**{¶26}** At the suppression hearing, Trooper Young testified that when she initially approached Blair's vehicle, she detected an odor of alcoholic beverage but could not pinpoint whether the odor was coming from Blair or the passenger.

After Blair was unable to find her keys to turn on the vehicle, Trooper Young asked Blair to sit in the front seat of her cruiser while she ran a computer check of Blair's driving record. Trooper Young explained that she asked Blair to sit in the cruiser so that she could ascertain whether the odor of alcoholic beverage she initially smelled was coming from Blair or the passenger. Trooper Young testified that Blair willingly complied with the request and was not under arrest at this point. The video of the stop corroborates Trooper Young's testimony in this regard. Moreover, Trooper Young testified that Blair would not have had to sit in the cruiser if she objected. [1]

{¶27} Trooper Young testified that while she was running a check of Blair's driving record in the cruiser, she detected a *strong* odor of alcoholic beverage on Blair's breath. *See State v. Marshall*, 2d Dist. No. 2001CA35, 2001-Ohio-7081 (holding that a strong odor of alcohol alone is sufficient to provide an officer with reasonable suspicion of criminal behavior). Trooper Young testified that the strong odor of alcoholic beverage coupled with Blair's admission to consuming alcohol earlier that night led her to make the decision to administer the

---

[1] On appeal, Blair cites *State v. Lozada*, 92 Ohio St.3d 74, 2011-Ohio-149 to claim that Trooper Young's pat down of her for weapons prior to sitting in the cruiser violated her Fourth Amendment rights. In *Lozada*, the Supreme Court held that "that during a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in the patrol car during the investigation is for the convenience of the officer." However, in this case, Trooper Young testified that one of the reasons she asked Blair to sit in the cruiser was to discern whether the odor of alcoholic beverage she smelled at the inception of the stop came from Blair or the passenger. Thus, Trooper Young's detention of Blair in her cruiser was not solely for officer convenience as in *Lozada*. Moreover, Blair failed to raise this issue regarding the pat down at the motion to suppress hearing, so even assuming arguendo that the pat down was improper the issue is now waived.

HGN test on Blair. After Blair's performance of the HGN test indicated six out of six clues of impairment, Trooper Young proceeded to administer the additional field sobriety tests of the walk-and-turn and one-leg-stand tests.

{¶28} The trial court noted on the record that the following facts contributed to its decision to find that Trooper Young had acquired the requisite reasonable, articulable suspicion to prolong the initial stop for a traffic violation in order to further detain Blair for investigatory purposes to administer the field sobriety tests.

> **There was reasonable articulable suspicion to detain and further investigate based on the odor coming from the car. Then there was an odor noted when the driver was separated from the car and its passenger. Thereafter there was an admission of alcohol use. Also included in the totality of the circumstances was the loss of the keys and the inability to turn the car on to look at the license plate. This also includes the time of day.**

(Hrg. Dec. 22, 2012 at 138-39).

{¶29} Based on evidence in the record, we conclude that Trooper Young encountered additional facts to give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. We further conclude that Trooper Young's reasonable, articulable suspicion that Blair was driving while impaired justified the prolonged detention to administer the field sobriety tests. Accordingly, we find no error with the trial court's decision to overrule Blair's motion to suppress on this basis.

**{¶30}** As the final two grounds for contending that the trial court erred in overruling her motion to suppress, Blair argues that the field sobriety tests and the chemical breath test were not administered in substantial compliance with the applicable guidelines, and therefore the results from these tests should have been suppressed. Blair further contends that without the field sobriety test results Trooper Young did not possess probable cause to arrest her.

**{¶31}** In order for the results of field sobriety tests to be admissible, the state is not required to show strict compliance with testing standards, but must instead demonstrate that the officer substantially complied with NHTSA standards. R.C. 4511.19(D)(4)(b); *State v. Clark*, 12th Dist. No. CA2009-10-039, 2010-Ohio-4567, ¶ 11. "A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis." *State v. Fink*, 12th Dist. Nos. CA2008-10-118, CA2008-10-119, 2009-Ohio-3538, ¶ 26. The state may demonstrate what the NHTSA standards are through competent testimony and/or by introducing the applicable portions of the NHTSA manual. *State v. Boczar*, 113 Ohio St.3d, 2007-Ohio-1251, at ¶ 28.

**{¶32}** At the suppression hearing and on appeal, Blair does not identify any specific error with Trooper Young's administration of the field sobriety tests, in light of NHTSA or other applicable guidelines, but nevertheless argues suppression of the test results is warranted. However, Trooper Young's testimony

indicates that she performed the field sobriety tests in accordance with the appropriate standards. In particular, Trooper Young testified that she received NHTSA and ADAP training and testified to her training regarding the method of administration and the clues she must observe while conducting the tests.

{¶33} Even assuming *arguendo* that we find that Trooper Young did not substantially comply with NHTSA or other applicable standards—which would require the results of the tests to be excluded—her testimony regarding the Blair's performance on nonscientific field sobriety tests is admissible under Evid.R. 701 and can support a finding of probable cause to arrest under the totality of the circumstances analysis. *See State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 14-15. Notwithstanding this fact, we find no error in the trial court's conclusion that the prosecution met its burden in demonstrating that Trooper Young's administration of the field sobriety tests substantially complied with NHTSA standards. Furthermore, we also conclude that the trial court did not err in determining that Trooper Young acquired the requisite probable cause to arrest Blair for OVI.

{¶34} Next, Blair challenges the admissibility of the results from the breath analysis test and asserts that the prosecution failed to demonstrate the test was conducted in substantial compliance with the regulations prescribed by the Director of the Ohio Department of Health.

{¶35} In seeking to suppress the results of a breath analysis test, the defendant must set forth an adequate basis for the motion. *State v. Shindler*, 70 Ohio St.3d 54, 58, 1994-Ohio-452. The motion must state the " * * * legal and factual bases with sufficient particularity to place the prosecutor and court on notice as to the issues contested." *Id*; Crim.R. 47. Once an adequate basis for the motion has been established, the prosecution then bears the burden of proof to demonstrate substantial compliance with the Ohio Department of Health regulations. *Xenia v. Wallace*, 37 Ohio St.3d 216, 220 (1988). If the prosecution demonstrates substantial compliance, the burden of proof then shifts to the defendant to overcome the presumption of admissibility and demonstrate that he or she was prejudiced by anything less than strict compliance. *State v. Burnside*, 100 Ohio St.3d at 157.

{¶36} The extent of the prosecution's burden to show substantial compliance varies with the degree of specificity of the violation alleged by the defendant. "When a defendant's motion to suppress raises only general claims, along with the Ohio Administrative Code sections, the burden imposed on the state is fairly slight." *State v. Johnson*, 137 Ohio App.3d 847, 851 (2000). Specifically, when a motion fails to allege a fact-specific way in which a violation has occurred, the state need only offer basic testimony evidencing compliance

with the code section. *State v. Bissaillon*, 2d Dist. No. 06–CA–130, 2007-Ohio-2349, ¶ 15.

{¶37} Here, Blair's motion to suppress asserted only general claims, along with the Ohio Administrative Code sections, and failed to allege a fact-specific basis that a violation had occurred. Therefore, the prosecution's burden to demonstrate substantial compliance with the Ohio Department of Health regulations was "fairly slight."

{¶38} Sergeant Hunter of the Ohio State Highway Patrol testified during the suppression hearing on the issue of substantial compliance. Specifically, he testified that he is certified as a senior operator of the BAC DataMaster and that he is qualified to perform calibration checks of the DataMaster. The prosecution admitted into evidence Sergeant Hunter's certificate from the Ohio Board of Health which demonstrated that he was certified to operate the DataMaster on the date of Blair's test. The prosecution also presented evidence, including the instrument check forms, which demonstrated that an instrument check of the machine used to test Blair was performed on September 4, 2011, the day before Blair's test, and that another check was performed on September 11, 2011. Sergeant Hunter testified that both instrument checks were performed by qualified senior operators and that the forms indicated that the machine was functioning properly and that all the Ohio Department of Health regulations were met.

{¶39} Sergeant Hunter also testified regarding his administration of the breath test to Blair. Specifically, he testified that he waited until the twenty-minute observation period was complete. He testified that he followed the appropriate procedure for running the machine, and explained to Blair how to blow into the machine and that he would tell her when to stop. Sergeant Hunter testified that he obtained a sufficient sample from Blair and that the test result indicated Blair's breath contained a concentration of alcohol of .106.

{¶40} On appeal, Blair now attempts to make arguments regarding the issue of substantial compliance that she failed to articulate at the suppression hearing. In addition, the record demonstrates that Blair failed to present any evidence rebutting the prosecution's showing that Sergeant Hunter administered the test in substantial compliance with the regulations prescribed by the Director of the Department of Health, let alone demonstrating that she was prejudiced by anything less than strict compliance. Accordingly, we find no error in the trial court's conclusion that the prosecution met its burden in showing that Blair's breath test was administered in substantial compliance with the Ohio Department of Health regulations.

{¶41} For all the foregoing reasons, we conclude that the trial court did not err in overruling Blair's motion to suppress. Therefore, Blair's first assignment of error is overruled.

*Second Assignment of Error*

**{¶42}** In her second assignment of error, Blair argues that the trial court violated her constitutional right of confrontation, right to compulsory process, right to present a meaningful defense, right to due process, and right to a fair trial. Blair's contentions under this assignment of error can be distilled into three main points.

**{¶43}** First, Blair argues that the trial court erred when it granted the prosecution's motion to quash, prohibiting her from subpoenaing the production of certain documents for trial. On the day before trial, Blair filed two subpoenas duces tecum: (1) requesting Trooper Young to bring "a copy of her call log to and from dispatch from the start of her shift on September 5, 2011, LHP 11 09 05 000 865, and a copy of her computer log (running license plate information and driver's license information) from the same shift on September 5, 2011;" and (2) requesting the Keeper of Records and/or Office Manager at Ralls Automotive to bring "a copy of or the original invoice for Megan Blair * * * for service to her 2004 Honda Civic on September 6, 2011, Customer ID 2263." (Docs. 21, 22, 23, 24). The prosecution subsequently filed a motion to quash the subpoenas. The same day, the trial court granted the prosecution's motion providing the following reason: "Criminal Rule 17(C) reads that a court may quash a subpoena if compliance would be unreasonable or oppressive. Considering that the trial is

scheduled to commence in less than 24 hours, this Court finds Defendant's subpoenas to be unreasonable and oppressive, and therefore, they are quashed." (JE, Mar. 6, 2012).

{¶44} Under Crim.R. 17(C), a subpoena may be used to command a person to produce in court books, papers, documents, and other objects. However, the court upon motion of a party may quash or modify the subpoena if compliance would be unreasonable or oppressive. Crim.R. 17(C). Generally, an appellate court applies an abuse of discretion standard when reviewing a trial court's decision to quash a subpoena. *State v. Wasmus*, 10th Dist. No. 94APA07–1013 (Apr. 27, 1995); *State v. Strickland*, 183 Ohio App.3d 602, 2009–Ohio–3906, ¶ 37 (8th Dist).

{¶45} At the outset we note that Blair never established the relevance of Trooper Young's logbooks to her defense or how her defense would be hindered by the exclusion of this evidence. The record demonstrates that before filing this subpoena, Blair's counsel failed to make a discovery demand regarding Trooper Young's logbooks, despite having over six months to do so. Nevertheless, for reasons not apparent in the record, Blair's counsel chose to spring this request on the prosecution less than twenty-four hours before trial, thereby depriving the prosecution of adequate notice to prepare for trial the following day without requesting a continuance. Notably, had Blair used the proper vehicle to request

this evidence through a discovery demand, the trial court still retained discretion to strike this last minute request as untimely pursuant Crim.R 16(M).[2]

{¶46} The second subpoena duces tecum filed by Blair the day before trial requested the records keeper from Ralls Automotive to bring an invoice from Blair's service visit to a mechanic there the day after her arrest for OVI. Blair's counsel attempted to admit this invoice into evidence at the suppression hearing over the prosecution's objection that the document was not provided in discovery and that the document was hearsay. The trial court sustained the prosecution's objection on both grounds and excluded the evidence, but allowed Blair's counsel to proffer the exhibit using Blair's testimony. Blair testified that she took her car to the mechanic the next day and no repairs to her rear license plate light were needed.

{¶47} It is obvious from Blair's proffered testimony that she was attempting to use this invoice to argue that her license plate light was operable at the time Trooper Young effectuated the traffic stop. However, this invoice from the day after the arrest was irrelevant to resolving the issue of whether Trooper Young had probable cause at the time she stopped Blair. Furthermore, Blair's

---

[2] Criminal Rule 16(M) states as follow: "Time of motions. A defendant shall make his demand for discovery within twenty-one days after arraignment or seven days before the date of trial, whichever is earlier, or at such reasonable time later as the court may permit. A party's motion to compel compliance with this rule shall be made no later than seven days prior to trial, or three days after the opposing party provides discovery, whichever is later. The motion shall include all relief sought under this rule. A subsequent motion may be made only upon showing of cause why such motion would be in the interest of justice."

subpoena duces tecum was a last minute attempt to bypass the trial court's ruling regarding the admissibility of this evidence at the suppression hearing. Notwithstanding the trial court's ruling to quash the subpoena, Blair was still able to present testimony similar to that which she gave at the suppression hearing regarding her visit to the mechanic the day after her arrest. We also note that the trial took place approximately six months from the date Blair claimed to have visited the mechanic regarding her rear license plate light. The record is devoid of any indication that Blair disclosed this invoice in reciprocal discovery to the prosecution despite having possession of this document throughout the course of the entire court proceedings.

{¶48} Accordingly, for all the reasons stated we find no abuse of discretion in the trial court's decision to grant the prosecution's motion to quash Blair's subpoenas.

{¶49} Next, Blair contends that the trial court committed reversible error when it prevented her from presenting certain evidence at the suppression hearing and at trial. Blair also claims the trial court prohibited her from cross-examining the prosecution's witnesses regarding her specific breathalyzer test results at the suppression hearing and at trial. The prosecution contends that Blair's counsel was merely making a veiled attempt to generally attack the reliability and validity

of the breath testing instrument and to relitigate settled substantial compliance issues at trial.

**{¶50}** Initially, we note that while the accused may not challenge the general accuracy of a legislatively determined testing instrument, he may challenge the accuracy of his specific test result. *Columbus v. Day*, 24 Ohio App.3d 173, 174 (1985). Thus, the accused may attempt to show that something went wrong with his test and consequently, the result was at variance with what the approved testing procedure should have produced. *Id.* Additionally, the accused may attack the test results pursuant to the rules of evidence and may also use expert testimony regarding the weight to be given to the evidence. *See generally State v. French*, 72 Ohio St.3d 446, 1995-Ohio-32 and *State v. Vega*, 12 Ohio St.3d 185 (1984).

**{¶51}** However, this issue is separate from the matter of whether the prosecution proved the breath test was performed in substantial compliance with the regulations of the Director of the Department of Health. The Supreme Court of Ohio has held the following regarding the admissibility of substantial compliance issues at trial.

> **Crim.R. 12(C)(3) and Traf.R. 11(B)(2) provide that "[m]otions to suppress evidence * * * on the ground that it was illegally obtained" must be raised before trial. We have expressly held that Crim.R. 12(C)(3) (then (B)(3)) requires a pretrial suppression hearing in a[n] [OVI] prosecution to determine the admissibility of alcohol-content test results claimed to have been**

**illegally obtained based on noncompliance with the director's rules governing the maintenance and operation of testing devices. If a defendant does not move for suppression prior to trial, he or she "may not object to the admissibility of the test results at trial on those grounds."**

**\* \* \***

**In summary, a challenge asserting that test results were not obtained in compliance with the director's rules must be raised by a defendant prior to trial by way of a pretrial motion to suppress. Failure to file such a motion constitutes a waiver, so that a defendant may not force the state to lay a foundation for the admissibility of the test results at trial: issues concerning compliance with the director's rules may not be raised for the first time at trial to challenge admissibility. Moreover, finality attaches to a ruling on a motion to suppress. Accordingly, the ruling of substantial compliance by the court at a pretrial suppression hearing prevails at trial, and a defendant may not raise, at trial, a challenge to the admissibility of test results based on the assertion that the state failed to comply with the director's rules in obtaining them.**

*State v Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, ¶¶ 11-12 (internal

citations omitted). As previously discussed in our resolution of the first

assignment of error, Blair failed to articulate any specific factual basis alleging

Sergeant Hunter failed to comply with the Ohio Department of Health regulations

at the suppression hearing. This lack of particularity triggered a "fairly slight"

burden on the prosecution to demonstrate that substantial compliance with the

Ohio Department of Health regulations was met. In reviewing the transcript from

the trial proceedings, the instances complained of by Blair regarding the trial

court's limiting of her cross-examination were simply attempts by Blair's counsel

to relitigate substantial compliance issues at trial that she failed to articulate at the suppression hearing. *See Edwards* at ¶ 20 (stating that compliance with Ohio Department of Health regulations "is not a jury question and is to be decided by the court prior to trial"). We further note that the trial court permitted Blair's counsel to question Trooper Young outside the presence of the jury to determine whether Blair's counsel intended to raise in front of the jury the prohibited issue of substantial compliance rather than raising the permissible issue of attacking the specific test result in her case. After listening to the questions prepared by Blair's counsel, the trial court determined that the questions attempted to relitigate the issue of substantial compliance and were inappropriate for the jury. Thus, we find no error with the trial court's ruling limiting defense counsel's cross examination in this regard.

{¶52} The other issue complained of by Blair in this assignment of error focuses on the trial court's ruling excluding certain exhibits relating to the "invalid sample test ticket" at the suppression hearing and at trial. This evidence relates to the first breath test administered to Blair by Trooper Young which produced an invalid result. The record demonstrates that the trial court excluded this evidence at the suppression hearing and at trial because Blair's counsel in both instances failed to lay a proper foundation for the evidence to be admitted as an exhibit.

{¶53} However, the trial court permitted Blair to question both Trooper Young and Sergeant Hunter about the invalid test result at the suppression hearing and at trial. Trooper Young testified that during her administration of the test Blair failed to continually breathe into the machine as instructed, but instead breathed and stopped, breathed and stopped, until the machine clicked off as invalid. Even though Trooper Young maintained at trial that the invalid sample was caused by Blair improperly blowing, Blair's counsel elicited testimony from Sergeant Hunter who read from the DataMaster Operator's Manual that an "invalid sample" indicates that the machine detected a substance in the mouth of the subject blown into the instrument, and that if the subject did not blow hard enough into the instrument, an "incomplete sample" or a "refusal" would be indicated. However, Sergeant Hunter also testified that the invalid test sample from Trooper Young's administration of the first test did not affect the validity of the breath sample he obtained from Blair in the second test which demonstrated that the concentration of alcohol in her breath exceeded the legal limit.

{¶54} It is apparent from the record that Blair intended to introduce the invalid sample test ticket to insinuate that the breathalyzer machine used to test her was somehow malfunctioning because it produced an invalid sample test ticket during Trooper Young's administration of the test. Blair's counsel was able to convey this argument to the jury without the invalid test sample being admitted

into evidence. Thus, even if the exhibits were excluded in error, Blair's defense was not hindered because the jury was still able to hear evidence relating to the invalid sample and weigh the credibility of that evidence accordingly.

{¶55} Blair's final arguments under this assignment of error pertain to her allegations that the trial court erred in excluding certain exhibits at trial. Some of the exhibits regarding the invalid test sample, test ticket,` Trooper Young's logbooks, and the mechanic's invoice have already been addressed. The remaining exhibits Blair sought to introduce were Trooper Young's narrative report and a list of medications for migraines and allergies that Blair took on the day of her arrest. Initially, we note that Trooper Young's narrative report was admitted without objection at the suppression hearing. However, Blair's counsel failed to lay a proper foundation to allow the exhibit to be admitted at trial.

{¶56} With regard to the list of medications, at the suppression hearing, Blair's counsel attempted to admit this list into evidence over the prosecution's objection that the exhibit was never disclosed in discovery. Blair's counsel conceded on the record that she never shared the exhibit with the prosecutor prior to the hearing. The trial court sustained the prosecution's objection and excluded the exhibit from evidence. However, at both the suppression hearing and at trial, Blair testified to the medications she takes on a daily basis as part of her defense and that she took those medications on the date of her arrest. Therefore, the

factfinder was able to discern the relevance of this evidence and weigh it accordingly.

{¶57} For all the reasons previously discussed, we find no error with the conclusions of the trial court to admit or to exclude the evidence raised in this assignment of error, and we further find that Blair suffered no violations of her constitutional rights as alleged. Blair's second assignment of error is overruled.

### *Third Assignment of Error*

{¶58} In her third assignment of error, Blair argues that the trial court erred when it imposed a one-year license suspension of her driver's license without giving her credit for the ninety-day Administrative License Suspension ("ALS") she received as a consequence of the concentration of alcohol in her breath testing above the legal limit. Specifically, Blair alleges that the trial court's failure to credit her for the ninety days transformed the ALS from remedial to punitive in nature as multiple punishments for the same offense, and therefore violated the Double Jeopardy Clause of the United States Constitution.

{¶59} It is well settled that "an ALS imposed pursuant to R.C. 4511.191, and a criminal [OVI] prosecution for violation of R.C. 4511.19 arising out of the same arrest constitute separate proceedings for double jeopardy purposes." *State v. Gustafson*, 76 Ohio St.3d 425, 438, 1996-Ohio-299. However, "an administrative license suspension imposed pursuant to R.C. 4511.191 ceases to be

remedial and becomes punitive in nature to the extent the suspension continues subsequent to adjudication and sentencing for violation of R.C. 4511.19." *Id.*, paragraph three of syllabus.

{¶60} Here, Blair's ALS was an automatic consequence of the breath test results indicating that the concentration of alcohol in her breath exceeded the legal limit. *See* R.C. 4511.191(C)(1). Because this was Blair's first offense, the duration of her ALS was three months and went into effect at the time she tested over the legal limit. *See* R.C. 4510.02; R.C. 4511.191 (C)(1)(a). The trial court imposed the one-year license suspension as a part of Blair's sentence stemming from her conviction for OVI, in violation of R.C. 4511.19(A)(1)(a). This occurred over six months after her ALS went into effect. Thus, Blair's ALS was complete nearly three months prior to the trial court imposing the judicial license suspension for her OVI conviction. Therefore, because Blair's ALS did not continue subsequent to the adjudication and sentencing for her violation of R.C. 4511.19 [OVI], the ALS did not become punitive in nature as Blair now contends.

{¶61} Moreover, we note that although it is within a trial court's discretion to credit the time completed under an ALS against a judicial suspension of a person's driver's license, Blair fails to direct us to any authority mandating that the trial court do so. We further note that for a first time OVI offense, the trial court was permitted to suspend Blair's driver's license for any period of time between

six months and three years. *See* R.C. 4510.02. The trial court's imposition of a one-year license suspension in this case was well within the statutorily prescribed limits. Accordingly, Blair's third assignment of error is overruled.

{¶62} Based on the foregoing, the judgment of the Marion Municipal Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, J., concur.**

**/jlr**

**ROGERS, J., Concurring Separately.**

{¶63} While I concur with the result reached by the majority, I write separately to address the second assignment of error and the trial court's actions as to the two subpoenas duces tecum.

{¶64} First and foremost, the trial court was only presented with one motion to quash. The State moved to quash Appellant's subpoena directed to Trooper Young and directing her to bring with her to trial her call log and her computer log. The State alleged that these records had been provided in discovery or were not relevant. Nowhere in its motion did the State allege that the requests for production were unreasonable and oppressive. Yet that was the basis stated by

the trial court to substantiate its ruling. There are no facts in the record that would substantiate the trial court's finding. Further, since the request was limited to one Trooper and the day in question, the finding itself seems unreasonable and arbitrary. Therefore, I would find error in the granting of the State's motion to quash.

{¶65} Second, there was no filing of any motion to quash the subpoena directed to Ralls Automotive. Therefore, there was no reason for the trial court to address that issue, let alone any evidence to substantiate a finding that such a request for production was unreasonable and oppressive. Again, I would find error by the trial court.

{¶66} However, Appellant has failed to demonstrate any prejudice to her case from the erroneous ruling of the trial court. As noted by the majority, Appellant failed to make any showing as to what relevant evidence would have been gleaned from the logs, and Appellant testified as to the same matters that might have been demonstrated by the records from Ralls Automotive. Therefore, I would find the errors to be harmless in this case.