[Cite as *State v. Shockey*, 2014-Ohio-5004.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY


STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  9-14-06

      v.

DOUGLAS SHOCKEY,               O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Marion Municipal Court
Trial Court No. TRC-12-09319

**Judgment Affirmed**

Date of Decision:   November 10, 2014


APPEARANCES:

    *Jeff Ratliff* for Appellant

    *Steven E. Chaffin*  for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant, Douglas Shockey ("Shockey"), brings this appeal from the judgment of the Municipal Court of Marion County, Ohio, denying his motion to suppress and finding him guilty of OVI (operation of a vehicle while under the influence). For the reasons that follow, we affirm the trial court's judgment.

{¶2} This case stems from an OVI charge filed against Shockey in the trial court on December 17, 2012, which was based on an arrest and a breath alcohol content (BAC) test conducted on the same day. Shockey moved to dismiss the charges, or in the alternative, to suppress evidence. Shockey cited multiple reasons for his motion, including failure to observe for a required twenty-minute period prior to the BAC test and failure to ensure no oral intake prior to the breath test. The trial court conducted a hearing on the motion.

{¶3} Four people testified at the suppression hearing about the events on December 17, 2012, when Shockey was arrested and brought to the Multi-County Jail for a breath test. They were: Sergeant Ben Kruder from the Multi-County Jail ("Sergeant Kruder"), Sergeant Todd Cunningham from the Ohio State Highway Patrol ("Sergeant Cunningham"), Trooper Kristi Comstock from the Ohio State Highway Patrol ("Trooper Comstock"), and Shockey. (*See* Tr. of Proceedings, June 27, 2013 ("Tr.").) As relevant to this appeal, Sergeant Kruder, Sergeant Cunningham, and Trooper Comstock testified that, upon arrival at the Multi-

County Jail, a foreign substance was removed from Shockey's mouth and, following a twenty-minute wait period, the breath test was administered. (Tr. at 3-79.) Shockey testified that he had tobacco in his mouth when he arrived at the Multi-County Jail. (Tr. at 88.) He stated that, upon being asked to spit it out, he "manipulated it, spit some of it out," and left some in his mouth for "[n]o particular reason." (*Id.*) He claimed that he swallowed the juices from the tobacco and that some of the tobacco was still in his mouth when he actually took the breath test. (Tr. at 88, 95.) Based on this testimony, Shockey requested suppression of his breath test results.

{¶4} Following the hearing, the trial court denied Shockey's motion. Shockey pled no contest to the OVI charge and was found guilty. He now appeals the trial court's denial of his motion to suppress, raising the following assignments of error.

**ASSIGNMENT OF ERROR NUMBER ONE:**

**The trial court failed to grant Appellant's Motion to Suppress when tobacco remained in Appellant's mouth and proper procedure was not followed in the removal of such item.**

**ASSIGNMENT OF ERROR NUMBER TWO:**

**The trial court failed to grant Appellant's Motion to Suppress when the twenty minute observation period was not observed by the arresting officer or the BAC test operator.**

{¶5} An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 100 Ohio

St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Norman*, 136 Ohio App.3d 46, 51, 735 N.E.2d 953 (3d Dist.1999). We will accept the trial court's factual findings if they are supported by competent, credible evidence because the "evaluation of evidence and the credibility of witnesses" at the suppression hearing are issues for the trier of fact. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992); *Norman* at 51; *Burnside* at ¶ 8. But we must independently determine, without deference to the trial court, whether these factual findings satisfy the legal standard as a matter of law because "the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review." *Norman* at 52; *Burnside* at ¶ 8.

{¶6} We address the two assignments of error together, as they both challenge compliance with the same breath testing procedure. The two assignments of error are based on the regulation that breath samples "shall be analyzed according to the operational checklist for the instrument being used." Ohio Adm.Code 3701-53-02(D). It has been recognized that one of the elements on the checklist is "that the person being tested be observed for twenty minutes before the test to prevent the oral intake of any material." *State v. Siegel*, 138 Ohio App.3d 562, 566-567, 741 N.E.2d 938 (3d Dist. 2000); *see also* R. at 5, BAC DataMaster Subject Test Form, Ex. B. This requirement operates "to eliminate the possibility that the test result is a product of anything other than the subject's deep lung breath." *State v. McAuley*, 8th Dist. Cuyahoga No. 76720, 2000 WL

1038186, *4 (July 27, 2000); *accord State v. Steele*, 52 Ohio St.2d 187, 191, 370 N.E.2d 740 (1977); *State v. Camden*, 7th Dist. Monroe No. 04 MO 12, 2005-Ohio-2718, ¶ 13, quoting *Bolivar v. Dick,* 76 Ohio St.3d 216, 218, 667 N.E.2d 18 (1996). Shockey argues that he was not properly observed for twenty minutes prior to the BAC test and further, that he had "swallowed the juice of the tobacco during the twenty (20) minute observation period." (App't Br. at 9, citing Tr. at 95.) He asserts that for these reasons, his BAC test was not administered in compliance with the regulations, and thus, the results of it should have been excluded.

{¶7} We have previously set forth the standard for reviewing a challenge to the breath test analysis in *State v. Blair*, 3d Dist. Marion No. 9-12-14, 2013-Ohio-646.

> In seeking to suppress the results of a breath analysis test, the defendant must set forth an adequate basis for the motion. The motion must state the " * * * legal and factual bases with sufficient particularity to place the prosecutor and court on notice as to the issues contested." Once an adequate basis for the motion has been established, the prosecution then bears the burden of proof to demonstrate substantial compliance with the Ohio Department of Health regulations. If the prosecution demonstrates substantial compliance, the burden of proof then shifts to the defendant to overcome the presumption of admissibility and demonstrate that he or she was prejudiced by anything less than strict compliance.

*Id.* at ¶ 35, quoting *State v. Shindler,* 70 Ohio St.3d 54, 58, 636 N.E.2d 319 (1994), *and* citing Crim.R. 47; *Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797

N.E.2d 71, at ¶ 24; *Xenia v. Wallace,* 37 Ohio St.3d 216, 220, 524 N.E.2d 889 (1988). We therefore review Shockey's challenges under the above standard.

**{¶8}** Shockey's motion in the trial court stated his bases for challenging the BAC test when it alleged that the State failed to comply with the twenty-minute observation period by failing to properly observe him and failing to ensure no oral intake prior to the breath test. The State then had a burden to demonstrate substantial compliance with the twenty-minute observation period. At the hearing, the State offered testimony of three witnesses. Sergeant Kruder, who is involved with the intake of arrestees at the Multi-County Jail, testified about his observations on the night Shockey was arrested. (Tr. at 3-25.) He saw a foreign substance being removed from Shockey's mouth and he testified to the twenty-minute wait period afterward, prior to the administration of the breath test. (Tr. at 8-11.) He admitted that no one looked in Shockey's mouth to see whether there was anything left in his mouth after the foreign substance was removed. (Tr. at 20.) But in his observation, there were no additional substances in Shockey's mouth. (Tr. at 23.)

**{¶9}** Sergeant Cunningham testified that he was present at the Multi-County Jail during the "whole time," "[f]rom when [Shockey] first came in there until the test was performed." (Tr. at 32.) He saw a foreign substance taken out of Shockey's mouth and testified to the twenty-minute wait before the BAC test "so that there was no foreign substance in his mouth." (Tr. at 33.) He admitted,

however, that he did not "time" the twenty-minute period and he did not personally search Shockey's mouth. (Tr. at 39-40.)

{¶10} Trooper Comstock was the person who arrested Shockey on December 17, 2012, and administered his breath test. (Tr. at 41-42; 53-55.) She testified that the first requirement on the BAC test checklist is "[o]bserve the subject 20 minutes prior to testing to prevent oral intake of any material." (Tr. at 54, quoting Tr. Ex. B.) She testified that this requirement was followed when administering Shockey's breath test, and added, "we did have a wait additional 20 minutes because of that substance that was discovered upon intake." (Tr. at 54.) Although Trooper Comstock saw the foreign object being removed out of Shockey's mouth, she admitted that she did not know whether "what he took out was everything that had been in his mouth." (Tr. at 75.) Trooper Comstock testified that during the twenty minutes preceding the test, she was "in close proximity and could observe [Shockey]." (*Id*.) According to her observations, Shockey did not intake any additional substance during the twenty-minute wait. (Tr. at 54-55; 75.) Trooper Comstock further observed Shockey and "his mouth while he was actually taking the test" and she stated that "[w]hile he was at the machine there didn't appear to be anything in his mouth." (*Id.* at 74-75.) On cross-examination, Trooper Comstock admitted that during the twenty-minute wait, she was involved in "doing some paperwork" and did not "directly" watch Shockey at the same time. (*Id.* at 75-76.) She stated that even when she wasn't

looking directly, Shockey was still being observed by other people, including "[t]he jail staff and Sergeant Cunningham." (*Id.* at 76, 79.)

{¶11} Based on this testimony, the trial court made the following factual findings.

> The evidence showed that Defendant was observed by Trooper Comstock, Trooper Cunningham, Sargeant [sic] Ben Kruder at the Multi-County Jail, and another unidentified officer at the jail. The three officers all testified that Defendant removed a foreign substance from his mouth at the jail and then was observed for twenty minutes after that before the breath test was administered. They all said nothing else entered Defendant's mouth during that time. The jail tape showed that at least thirty-three minutes passed after Defendant took something out of his mouth and discarded it before the breath test was administered. Nothing else was ingested from outside his mouth during that time. The Court finds that Defendant was properly observed for the required twenty minute period.

(R. at 13, J. Entry at 3.) Therefore, the trial court found substantial compliance with the twenty-minute observation period. Shockey argues that the trial court's finding was incorrect because Sergeant Kruder was not a proper person to perform the observation. Arguing that the testimony of Sergeant Kruder cannot be used to establish the twenty-minute observation period, Shockey claims that this requirement was not satisfied by Sergeant Cunningham and Trooper Comstock only. (App't Br. at 18.)

{¶12} Shockey fails to cite any law that supports his argument that Sergeant Kruder was not qualified to perform the required observation. Nevertheless, even without Sergeant Kruder's testimony, the trial court's finding of substantial

compliance with the twenty-minute observation period is supported by evidence. Apart from Sergeant Kruder, two more witnesses testified that they observed Shockey and none of them testified that the observation period was interrupted in any way. Sergeant Cunningham testified that he was present at the scene during the entire twenty-minute observation period and did not see anything enter Shockey's mouth. Shockey claims that Sergeant Cunningham's testimony, "we waited an additional twenty minutes to perform BAC test so that there was no foreign substance in his mouth," is insufficient because he did not *expressly* say that *he* observed Shockey. Shockey is reading failure to observe into Sergeant Cunningham's testimony where no such failure is established by the record.

{¶13} Shockey's challenge further fails because Trooper Comstock's observation is sufficient on its own, in spite of the fact that she was doing some paperwork at the same time. Since strict compliance with the twenty-minute observation period is not required, *see Bolivar*, 76 Ohio St.3d at 218, 218, 667 N.E.2d 18, the State need not demonstrate that:

> " * * * the subject was constantly within [the witnessing officer's] gaze, but only that during the relevant period the subject was kept in such a location or condition or under such circumstances that one may reasonably infer that his ingestion of any material without the knowledge of the witness is unlikely or improbable.
>
> *To overcome that inference, the accused must show that he or she did, in fact, ingest some material during the twenty-minute period. The 'mere assertion that ingestion was hypothetically possible ought not to vitiate the observation period foundational fact so as to render the breathalyzer test results inadmissible.' "*

(Emphasis sic.) *Siegel*, 138 Ohio App.3d at 569, 741 N.E.2d 938, quoting *State v. Adams*, 73 Ohio App.3d 735, 740, 598 N.E.2d 176 (2d Dist.1992), *and Steele*, 52 Ohio St.2d at 192, 370 N.E.2d 740; *see also State v. Isbell*, 3d Dist. Shelby No. 17-08-08, 2008-Ohio-6753, ¶ 34.

**{¶14}** Shockey attempts to overcome the presumption of substantial compliance arguing that he had "swallowed the juice of the tobacco during the twenty (20) minute observation period." (App't Br. at 9, citing Tr. at 95.) He relies on our opinion in *Siegel* at 568, where we held that "if an accused orally ingests any material within the twenty-minute observation, the test as administered was not in 'substantial compliance' with the Ohio Department of Health regulations."

**{¶15}** Shockey's argument is unavailing. In *Siegel*, the defendant drank "quite a bit" of water *during the twenty-minute observation period before the test*. *Id.* at 565. Shockey, however, does not allege that he placed the tobacco or anything else in his mouth *during the observation period*. He does not dispute the testimony of three witnesses who "all said nothing else entered defendant's mouth during that time." (R. at 13, J. Entry at 3.) Nor does he dispute the trial court's finding that "[n]othing else was ingested from outside his mouth during that time." (*See id.*)

{¶16} In *State v. Bibler*, we reviewed an almost identical situation, where "two police officers testified that they watched [the defendant] for the entire time and that he did not place anything in his mouth." 3d Dist. Marion No. 9-01-19, 2001 WL 1187817, *2. Although the defendant did not dispute the police officers' testimony, he alleged that "snuff remained in his mouth subsequent to the officer directing him to spit out the substance." *Id.* We refused to use the defendant's self-serving testimony about the snuff remaining in his mouth to reverse the trial court's factual finding that he "did not intake any material during the twenty minute observation period," which "was based on competent, credible evidence." *Id.* We recognized that there was "absolutely no evidence of oral intake during the observation period." *Id.* Therefore, we overruled the defendant's assignment of error, holding, that "[t]he State presented unchallenged testimony that the appellant was observed for the full time period and that there was no oral intake at any point. This is sufficient evidence for the State to meet its burden." *Id.*

{¶17} The Eleventh District Court of Appeals came to the same conclusion upon the defendant's assertion that during the twenty-minute observation period he had chewing tobacco in his mouth and he was still swallowing tobacco juices. *See State v. Dierkes*, 11th Dist. Portage No. 2008-P-0085, 2009-Ohio-2530, ¶ 12. In *Dierkes*, the State established that during the observation period the defendant did not "put anything in his mouth." *Id.* at ¶ 43. The observing officer "did not

- 11 -

notice anything in his mouth." *Id.* at ¶ 42. The trial court found that no oral intake occurred and that the BAC test " 'was administered in compliance with D.O.H. regulations, and the result is admissible. * * *' " *Id.* at ¶ 46-47. The Court of Appeals affirmed. *Id.* at ¶ 50. In the current case, like in *Dierkes*, the witnesses testified that they did not see anything in Shockey's mouth after the tobacco was removed and did not see any new material enter his mouth during the twenty-minute observation period.

**{¶18}** Similarly, the Fourth District Court of Appeals refused to suppress evidence where the defendant testified that tobacco remained in his mouth throughout the observation period and that he ingested some tobacco during that time. *See State v. Murray*, 4th Dist. Ross No. 95 CA 2090, 1995 WL 752454 (Dec. 15, 1995). The Court of Appeals offered two reasons for its decision. As one of them, the Court of Appeals recognized that:

> appellant presented no evidence that any foreign substance was digested and passed into his blood stream, or received into his respiratory system during the observation period. Appellant presented no evidence to prove that any foreign substance interacted with his alveolar air so as to have an effect on his breath test result. Appellant did not present evidence at the suppression hearing to prove that a minute amount of tobacco in his mouth would affect the breath test results.

(Citations omitted.) *Id.* at *4. Like the defendant in *Murray*, irrespective of whether any tobacco remained in his mouth, Shockey presented no evidence to

prove that his breath test results were in any way affected, so as to require the suppression of evidence.

{¶19} Shockey cites two cases from the Fifth District Court of Appeals, where the court, relying on its reasoning that "the term 'intake' is broader than the term 'ingest,' " held that the act of chewing a gum or tobacco during the observation period results in ingestion of its ingredients and invalidates substantial compliance with the Ohio Department of Health regulations. *See State v. Karns*, 5th Dist. Fairfield No. 97CA0002, 1998 WL 550708 (July 21, 1998); *State v. Baldridge*, 5th Dist. Ashland No. 01-COA-01412, 2001 WL 1673756, quoting *Karns id.* While we do not follow the reasoning of the Fifth District Court of Appeals, we recognize that *Karns* and *Baldridge* are distinguishable from the current case. In both cases, there were factual findings by the trial court that defendants had foreign objects in their mouths *within* the twenty minutes prior to the administration of the test. *Karns* at *1; *Baldridge* at *2. Here, the trial court did not make a finding that Shockey actually had tobacco remaining in his mouth during the twenty-minute observation period. Although the trial court acknowledged Shockey's testimony that he "left some tobacco in his mouth" and "swallowed juice from it prior to the test," it recognized that "Sargent [sic] Kruder and Trooper Comstock said they did not observe anything else in Defendant's mouth after the tobacco was removed." (R. at 13, J. Entry at 3.)

{¶20} Our review of Ohio cases supports a finding of substantial compliance. Thus, following our decision in *Bibler*, we hold that the State met its burden of proving substantial compliance with the Ohio Department of Health regulations and Shockey's mere allegations do not amount to the showing of prejudice so as to overcome the presumption of admissibility under the standard we established in *Blair*, 3d Dist. Marion No. 9-12-14, 2013-Ohio-646, at ¶ 35. Therefore, we hold that the State substantially complied with the Ohio Department of Health regulations and lacking any prejudice shown or alleged by Shockey, the breath test results are admissible. *See id.*

{¶21} Based upon the forgoing discussion, Shockey's assignments of error are overruled.

*Conclusion*

{¶22} Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Municipal Court of Marion County, Ohio is therefore affirmed.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**